IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMILY SOUSA,

    *Plaintiff,*

    v.

AMAZON.COM, INC., AMAZON.COM      No. 1:21-cv-717-SB
SERVICES LLC, and LAWRENCE
DORSEY

    *Defendants.*

---

Michele D. Allen, Emily A. Biffen, ALLEN & ASSOCIATES, Wilmington, Delaware; Anthony G. Bizien, Lawrence M. Pearson, WIGDOR LLP, New York, New York.

    *Counsel for Plaintiff.*

Beth Moskow-Schnoll, Juliana Van Hoeven, BALLARD SPAHR LLP, Wilmington, Delaware; Jason C. Schwartz, GIBSON DUNN, Washington, District of Columbia; Hannah Regan-Smith, Jessica Brown, GIBSON DUNN, Denver, Colorado.

    *Counsel for Defendants.*

---

**MEMORANDUM OPINION**

December 13, 2021

BIBAS, *Circuit Judge*, sitting by designation.

No one should suffer race or sex discrimination at work. But not all offensive remarks are discriminatory. Employees must put up with some trials and tribulations in the workplace.

Emily Sousa is no different. She says Amazon treated her less favorably than other employees and forced her to endure a hostile workplace. She also alleges that her supervisors retaliated against her when she reported discrimination. But the details in her complaint belie those serious allegations. At root, Sousa identifies only a few offensive remarks from one supervisor and several personal phone calls from another. That does not amount to discrimination, so her claims fail.

## I. BACKGROUND

After college, Sousa became a shift manager at Amazon. D.I. 14 ¶ 2. But her transition to the workforce was rough. A male manager soon compared her to an adult actress and told her that "women are too delicate to work at Amazon." *Id.* ¶¶ 3, 31. Understandably, she reported this and resigned. *Id.* ¶¶ 31–36. Unwilling to lose her, Amazon offered to reinstate her and transfer her from New Jersey to Delaware. *Id.* ¶¶ 5, 36. Sousa accepted; she had a fresh start.

But it did not take long for things to go wrong again. Sousa alleges that Lawrence Dorsey, a manager at the Delaware site, who later became her supervisor, "quickly made [her] the target of constant harassment." *Id.* ¶ 7. On her first day, Dorsey phoned Sousa and talked with her for "nearly an hour." *Id.* ¶ 43. Even though Dorsey

did not directly supervise Sousa, he continued to call her to talk about his personal life, haircuts, girlfriends, and vacation plans. *Id.* ¶¶ 67–95.

Dorsey's calls made Sousa uncomfortable. *See, e.g., id.* ¶¶ 75, 77. She claims that he would steer their conversations toward Sousa's Japanese heritage and noticed that he occasionally mentioned racial stereotypes. *Id.* ¶¶ 71–73. For instance, he told her that he thought Japanese people were "polite and non-confrontational," mentioned his interest in Japanese cartoons, and invited Sousa to be his "travel guide" should he ever go to Japan. *Id.* ¶¶ 72–73. These references made Sousa uneasy because Dorsey had a reputation for being a "creep" with a particular interest in women from Asia. *Id.* ¶¶ 8, 78–80, 99.

Then, Amazon temporarily reassigned Sousa to a facility in New Jersey. It said her transfer was to cover a holiday-season staffing shortage. *Id.* ¶¶ 111–19. She alleges that Dorsey was behind this decision and was retaliating against her for spurning his advances. *Id.* ¶¶ 120, 123. Sousa was particularly unhappy because she was expected to fill in as a line worker, not as a manager. *Id.* ¶ 125.

When Sousa returned from New Jersey, she took a leave of absence. *Id.* ¶ 137. She also contacted HR about Dorsey. She told them that she was afraid to file a complaint against him, but nonetheless agreed to proceed with an investigation. *Id.* ¶ 139. Ultimately, HR concluded that Sousa's allegations lacked evidence. *Id.* ¶ 147.

After the investigation, Sousa asked to transfer to another facility to get away from Dorsey. Amazon responded that she would have to return to work before it could

process her transfer. *Id.* ¶ 149. Unwilling to do that, Sousa quit to accept a new job at a different Amazon-owned company. *Id.* ¶ 152.

She sued Amazon for race- and sex-based discrimination under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. D.I. 14. Now Amazon moves to dismiss her claims. D.I. 16.

## II. SOUSA FAILS TO STATE A TITLE VII CLAIM

Title VII of the Civil Rights Act forbids employment discrimination based on race, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1).

To establish Title VII discrimination, Sousa tries four different theories. First, she claims that she was treated differently from other employees because of her race and sex. Second, she says Amazon exposed her to a hostile work environment. Third, she alleges that Dorsey subjected her to quid-pro-quo harassment. Finally, she contends that Amazon retaliated against her for reporting discriminatory behavior. Amazon moves to dismiss all four.

To survive a motion to dismiss, Sousa must "ma[ke] factual allegations that state a plausible ground for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 n.8 (2007)). While her "complaint need not establish a *prima facie* case" of Title VII discrimination, she must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (cleaned up). Under this standard, all of Sousa's claims fail.

**A. Sousa fails to allege differential treatment because of sex or race**

To plead a Title VII disparate-treatment claim, Sousa must allege that:

4

- she belongs to a protected class;

- she is qualified for her job;

- she "suffered an adverse employment action;" and

- the circumstances surrounding that action "give rise to an inference of intentional discrimination."

*Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). She checks the first two boxes: Because Sousa is an Asian woman, it is uncontested that she is a member of a protected class. And Amazon concedes that Sousa was qualified for her job. D.I. 17, at 5–9. But she fails to check the other two.

*1. Sousa did not suffer an adverse employment action.* Sousa calls her temporary transfer an adverse employment action. Not so. To count, it must have caused "a significant change in employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). That never happened.

Demotions are characterized by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Ellerth*, 524 U.S. at 761. Here, Sousa's allegations fall short. She did not lose her job title. Her wage and benefits remained the same. Though she alleges that the reassignment hurt her chances of promotion, that assertion is undercut by her complaint. *Compare* D.I. 14 ¶¶ 113−15 (acknowledging that, despite the transfer, Amazon scheduled her for promotion between March−May 2021), *with* D.I. 20-1, at 1 (stating in an offer letter that Sousa would be up "for a performance assessment and compensation adjustment" in April 2021).

Plus, a ten-day transfer to fill in for a lower-level employee does not count as "significantly diminished material responsibilities." *Ellerth*, 524 U.S. at 761. True, Sousa says she went from "supervising associates" to "lifting packages." ¶ 125. But she was asked to do so only for a very brief time. Plus, when Sousa returned from the reassignment, she was no worse off than when she left. A short-term transfer with no real consequence for Sousa's career is not an adverse employment action. *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) ("Changes in duties or working conditions that cause no materially significant disadvantage … are insufficient."); *Taylor v. Burwell*, 2014 WL 3547337, at *6 (D. Md. July 16, 2014) (finding a three-month assignment "below [the plaintiff's] pay grade" was not an adverse action).

*2. Sousa does not plead facts suggesting intentional discrimination.* Even if Sousa had pleaded an adverse employment action, she does not plead facts "creat[ing] an inference that … [it] was based on an illegal discriminatory criterion." *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 356 (3d Cir. 1999) (internal quotation marks omitted).

"[T]he plaintiff's task is to demonstrate that similarly situated employees were not treated equally." *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981). That is, that she was treated less favorably than employees who are not members of the same protected class. *See, e.g.*, *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013).

Here, Sousa does not do that. She says that she was selected for reassignment instead of a black woman and white man. D.I. 14, ¶ 117. Yet the man was not suitable

6

for reassignment because he was up for a promotion. *Id.* So he was not similarly situated to Sousa. Plus, Sousa does not suggest that she was selected instead of the woman *because* she is from Japan. So her sex-, race-, and national-origin-based discrimination claims fail.

But I will dismiss her claims without prejudice; Sousa may still allege that Amazon took other adverse actions and that similarly situated employees were not reassigned.

**B. Sousa fails to allege a hostile work environment at Amazon**

To assert a hostile-work-environment claim under Title VII, Sousa needed to allege that she experienced severe or pervasive discrimination that is both objectively and subjectively detrimental, and that Amazon "knew or should have known" about it and failed to stop it. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999).

In deciding whether Sousa suffered "severe or pervasive" discrimination, I must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993).

To meet this standard, Sousa says she was harassed by two Amazon employees: the supervisor who told her she looked like an adult actress and Dorsey. D.I. 14 ¶ 3, 31; D.I. 19, at 3. But their alleged conduct does not amount to severe or pervasive discrimination.

Start with Dorsey's phone calls. Sousa says he bragged about his promotion, asked if she liked his haircut, told her he likes Japanese cartoons, suggested that she should

be his "travel guide" should he make a trip to Japan, requested dating advice, and asked about her boyfriend. D.I. 14 ¶¶ 68,71−74, 76, 86, 89, 96, 135. True, repeated unwanted advances by a male supervisor may amount to sexual harassment. *See, e.g.*, *Petril v. Cheyney Univ. of Pa.*, 789 F. Supp. 2d 574, 579 (E.D. Pa. 2011). But even if Dorsey's calls count as intentional discrimination, they were not severe. Though he asked Sousa if she was available, he never clearly propositioned her or even asked her on a date. Nor were his calls pervasive. Sousa's complaint identifies four phone calls spread out over three months. D.I. 14 ¶¶ 68, 69, 76, 84. That is a far cry from the kind of repeat misconduct that "alter[s] the conditions of … employment and create[s] an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quotation marks omitted); *see also Jacques-Scott v. Sears Holding Corp.*, 2013 WL 2897427, at *10 (D. Del. 2013) (four instances of arguably discriminatory conduct not enough).

To Dorsey's conduct, Sousa adds one supervisor's offensive remarks on her first day at work. No doubt, his remarks crossed the line. But even on top of Dorsey's calls, this isolated incident is not enough to state a claim. *See Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (offhand comments and isolated incidents are not enough); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001) (mere "utterance of an epithet, joke, or inappropriate taunt … does not sufficiently affect the conditions of employment to implicate Title VII."). So this claim fails.

### C. Sousa fails to allege *quid pro quo* harassment

Next, Sousa says that Dorsey subjected her to *quid pro quo* harassment. To plead this, she must allege that she suffered "tangible adverse action result[ing] from [her]

8

refusal to submit to [Dorsey's] sexual demands." *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 565 (3d Cir. 2017).

Sousa does not do that. True, she pleads Dorsey made romantic advances. She alleges that he thought she was "really pretty" and said he "couldn't wait to work with her," then pursued her with lengthy personal calls. D.I. 14 ¶ 47. And she arguably rejected these advances, though she never says when she spurned him. *See, e.g.*, *id.* ¶ 95. But Sousa cannot show that as a result Dorsey took a "tangible adverse action". *Id.* As I have explained, her temporary reassignment does not count. Even if it did, Dorsey asked Sousa if she was "available" only *after* she returned from her transfer. *Id.* ¶ 135. That is the only time that he allegedly made a "sexual demand." *Doe*, 850 at 565 (3d Cir. 2017). Since Sousa had not yet rejected him when she was transferred, it could not have been due to Dorsey's retaliation.

### D. Sousa fails to allege that Amazon retaliated against her

Title VII bars employers from retaliating against employees who oppose discriminatory conduct in the workplace. 42 U.S.C. § 2000e-3(a). To plead Title VII retaliation, Sousa must allege that she "protest[ed] … discriminatory employment practices" and that she suffered an adverse employment action as a result. *Moore v. City of Phila.*, 461 F.3d 331, 343 (3d Cir. 2006). She claims that three of Amazon's employment decisions count as retaliation.

*1. Sousa's reassignment from New Jersey to Delaware.* Sousa says her transfer from New Jersey to Delaware was retaliation for reporting her first supervisor's offensive comments.

9

Not so. She "has not explained how, if at all, her transfer[] from one part of the company to another w[as] materially adverse." *Rigg v. Urana*, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015). Plus, she does not allege facts "allow[ing] the inference" of a causal connection between her decision to report the supervisor and the reassignment. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Indeed, Amazon offered to transfer Sousa only *after* she had voluntarily resigned. D.I. 14 ¶¶ 35–36. That cuts against an inference of retaliation: after she resigned, Amazon did not have to offer her a new job.

*2. Sousa's temporary reassignment.* Sousa contends that her reassignment to cover a holiday staffing shortage was retaliation for "rebuff[ing] [Dorsey's] advances." *Id.* ¶ 11. But that argument fails because her temporary reassignment does not count as an adverse employment action. *See Ellerth*, 524 U.S. at 761.

*3. Constructive discharge.* Sousa claims that Amazon "constructively discharg[ed]" her after she reported Dorsey. D.I. 14 ¶ 161. Sousa reported him to HR while on leave. *Id.* ¶¶ 137–39. After HR investigated, Sousa asked to be reinstated at a different facility. Yet Amazon told her that she had to return to work before it would consider that request. *Id.* ¶ 149.

Even if true, those facts do not amount to a constructive discharge. To plead that, Sousa must allege that Amazon "knowingly permitted conditions of discrimination … so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). But there is no indication that

10

working in the same facility as Dorsey for a short time, while her transfer was processed, would have been "so intolerable" that a reasonable employee would resign.

### III. SOUSA FAILS TO STATE A § 1981 CLAIM

In addition to her Title VII claims, Sousa says Amazon violated her rights under 42 U.S.C. § 1981. That statute gives "[a]ll persons … the same right … to make and enforce contracts." *Id.* An employer violates it when he racially discriminates against an employee, thus depriving them of the full benefit of their contract of employment. *See, e.g.*, *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010).

The elements of a § 1981 claim "are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82. Thus, Sousa must show that Amazon took an adverse employment action based on "a racially discriminatory motive." *Id.* Yet as I have explained, Sousa does not plead that.

\* \* \* \* \*

Sousa says Amazon discriminated against her based on her sex and race. Yet the details in her complaint do not live up to those serious allegations. True, Sousa was asked to endure an inconvenient temporary reassignment. Plus, one of her supervisors made offensive remarks and another made a handful of unwanted phone calls. But those are workplace troubles, not discrimination. So Sousa's claims fail. But because she might still augment her complaint, I dismiss without prejudice.