## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMILY SOUSA, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:21-cv-00717 (SB) |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., AMAZON.COM | ) | |
| SERVICES LLC, and LAWRENCE DORSEY, | ) | |
| in his individual and professional capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF EMILY SOUSA'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS AMAZON.COM, INC., AMAZON.COM SERVICES LLC,
## AND LAWRENCE DORSEY'S MOTION TO DISMISS
## THE SECOND AMENDED COMPLAINT

**ALLEN & ASSOCIATES**

Michele D. Allen (#4359)
Emily A. Biffen (#6639)
4250 Lancaster Pike
Wilmington, Delaware 19805
Telephone: (302) 234-8600
Facsimile: (302) 397-3930
michele@allenlaborlaw.com
emily@allenlaborlaw.com

**WIGDOR LLP**

Lawrence M. Pearson
Anthony G. Bizien
(all admitted *pro hac vice*)
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Telephone: (212) 257-6845
lpearson@wigdorlaw.com
abizien@wigdorlaw.com

*Counsel for Plaintiff*

Dated:  March 23, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 1

STATEMENT OF FACTUAL ALLEGATIONS .......................................................... 3

ARGUMENT ................................................................................................................. 7

I.      STANDARD OF REVIEW ................................................................................ 7

II.    THE EXHIBITS DEFENDANTS IMPROPERLY ATTACHED TO THEIR COMPLAINT SHOULD BE DISREGARDED—THE EXHIBITS ARE SELECTIVE AND WERE NOT INCORPORATED INTO THE SAC ............................ 8

III.   DORSEY'S CONDUCT SHOWS SEXUAL/ROMANTIC PURSUIT OF SOUSA AND OTHER ACTS TOWARDS WOMEN THAT SUPPORT CLAIMS FOR *QUID PRO QUO* AND HOSTILE ENVIRONMENT SEXUAL HARASSMENT ......... 10

IV.   SPECIFIC FACTUAL ALLEGATIONS SHOWING A FIXATION BY DORSEY ON SOUSA'S JAPANESE CHARACTERISTICS SUPPORT AN INFERENCE OF DISCRIMINATION BASED ON RACE, ETHNICITY, AND NATIONAL ORIGIN ............................................................................................................. 13

V.    SOUSA HAS ALLEGED ADVERSE EMPLOYMENT ACTIONS, INCLUDING LOSS OF PROMOTION, CONSTRUCTIVE DISCHARGE, DEMOTION, AND HARASSMENT (WHICH ALSO DROVE HER INTO MEDICAL LEAVE) .............. 15

VI.   DEFENDANTS' ACTIONS AGAINST SOUSA SHORTLY AFTER HER LEGALLY PROTECTED ACTIVITY SHOW RETALIATORY ANIMUS .................. 18

       A.    Plaintiff Engaged in Legally Protected Activity by Refusing Dorsey's Advances and Reporting His Conduct to Amazon ............................................. 18

CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

Adetoro v. King Abdulla,
  Acad., 2020 WL 7122858 (D.D.C. Dec. 4, 2020) ..................................................... 14

Allen v. Mo.,
  2013 WL 2156259 (E.D. Mo. May 17, 2013) .......................................................... 12

Antoine v. Brooklyn Maids 26, Inc.,
  489 F. Supp. 3d 68 (E.D.N.Y. 2020) ....................................................................... 19

Armbruster v. Epstein,
  1996 WL 289991 (E.D. Pa. May 31, 1996) ............................................................. 18

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .................................................................................................. 7

Bingaman v. Buhay,
  2007 WL 707026 (M.D. Pa. Mar. 2, 2007) ................................................................ 7

Borrell v. Bloomsburg Univ.,
  955 F. Supp. 2d 390 (M.D. Pa. 2013) ..................................................................... 16

Bostock v. Clayton Cnty., Ga.,
  140 S.Ct. 1731 (2020) ............................................................................................. 14

Bowlen v. Coloplast A/S,
  2019 WL 4597570 (W.D. Pa. Sep. 23, 2019) .......................................................... 13

Brown v. R.R. Grp. LLC,
  350 F. Supp. 3d 300 (D.N.J. 2018) ......................................................................... 17

Brown-Baumbach v. B&B Auto, Inc.,
  437 F. App'x 129 (3d Cir. 2011) ............................................................................. 12

Bryson v. Chicago St. Univ.,
  96 F.3d 912 (7th Cir. 1996) .................................................................................... 11

Carter v. Ball,
  33 F.3d 450 (4th Cir. 1994) .................................................................................... 20

Castleberry v. STI Grp.,
  863 F.3d 259 (3d Cir. 2017) .................................................................................... 10

Cloud v. Brennan,
    436 F. Supp. 3d 1290 (N.D. Cal. 2020) ............................................................ 19

Comcast Corp. v. Nat'l Assoc. of African-American Owned Media,
    140 S.Ct. 1009 (2020) ...................................................................................... 15

Connelly v. Lane Const. Corp.,
    809 F.3d 780 (3d Cir. 2016) ............................................................................... 8

Curry v. Devereux Found.,
    541 F. Supp. 3d 555 (E.D. Pa. 2021) ......................................................... 15, 17

Daoud v. City of Wilmington,
    894 F. Supp. 2d 544 (D. Del. 2012) .................................................................. 7

de la Cruz v. NYC Human Res. Admin. Dep't of Soc. Serv.,
    82 F.3d 16 (2d Cir. 1996) ................................................................................ 16

Doe v. Mercy Cath. Med. Ctr.,
    850 F.3d 545 (3d Cir. 2017) ............................................................................ 12

Durham Life Ins. v. Evans,
    166 F.3d 139 (3d Cir. 1999) ............................................................................ 16

Erickson v. Pardus,
    551 U.S. 89 (2007) ............................................................................................ 7

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998) ........................................................................................ 15

Farrell v. Planters Lifesavers Co.,
    22 F. Supp. 2d 372 (D.N.J. 1998) ................................................................... 18

Ferguson v. E.I. duPont de Nemours & Co.,
    560 F. Supp. 1172 (D. Del. 1983) ................................................................... 12

Fowler v. UPMC Shadyside,
    578 F.3d 203 (3d Cir. 2009) ........................................................................ 8, 12

Friedman v. Lansdale Parking Auth.,
    151 F.R.D. 42 (E.D. Pa. 1993) .......................................................................... 9

Gazdick v. Solis,
    2013 WL 1909576 (M.D. Pa. May 8, 2013) ................................................... 12

Goss v. Exxon Office Sys.,
    747 F.2d 885 (3d Cir. 1984) ............................................................................ 17

Grady v. Cracker Barrel Old Country Store, Inc.,
  2007 WL 1959298 (M.D. Pa. July 2, 2007)............................................................................ 12

Gunnell v. Utah Valley State Coll.,
  152 F.3d 1253 (10th Cir. 1998) ............................................................................................. 15

Harrison-Harper v. Nike, Inc.,
  2018 WL 4614158 (E.D. Pa. Sep. 24, 2018) ........................................................................ 12

Henson v. City of Dundee,
  682 F.2d 897 (11th Cir. 1982) .............................................................................................. 16

Hicks v. Gates Rubber Co.,
  833 F.2d 1406 (10th Cir.1987) ............................................................................................. 11

Hill v. Borough of Kutztown,
  455 F.3d 225 (3d Cir. 2006)................................................................................................... 17

Hilt-Dyson v. City of Chicago,
  282 F.3d 456 (7th Cir. 2002) ................................................................................................ 15

Hodges v. Gellerstedt,
  833 F. Supp. 898 (M.D. Fla. 1993).......................................................................................... 11

Hughes v. Twenty-First Century Fox, Inc.,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018)..................................................................................... 19

Huston v. Proctor & Gamble Paper Prods. Corp.,
  568 F.3d 100 (3d Cir. 2009).................................................................................................. 13

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997)................................................................................................... 9

Irwin v. Fry Comms., Inc.,
  2021 WL 5756386 (M.D. Pa. Aug. 17, 2021) ....................................................................... 16

Joiner v. Wal-Mart Stores, Inc.,
  114 F. Supp. 2d 400 (W.D.N.C. 2000) ................................................................................. 12

Khoja v. Orexigen Therapeutics, Inc.,
  498 F. Supp. 3d 1296 (S.D. Cal. 2020)..................................................................................... 9

Konstantopoulos v. Westvaco Corp.,
  112 F.3d 710 (3d Cir. 1997).................................................................................................. 17

iv

LaMarca v. City of Niagra Falls,
    2016 WL 8674161 (W.D.N.Y. Feb. 12, 2016) ..................................................... 12

LeMaire v. Louisiana Dep't of Transp. & Dev.,
    480 F.3d 383 (5th Cir. 2007) ..................................................... 19

Little v. Chambersburg Hosp.,
    2012 WL 1048820 (M.D. Pa. Mar. 28, 2012)..................................................... 12

Martinez v. UPMC Susquehanna,
    986 F.3d 261 (3d Cir. 2021)..................................................... 8

McNely v. Ocala Star-Banner Corp.,
    99 F.3d 1068 (11th Cir. 1996) ..................................................... 15

Meritor Sav. Bank, FSB v. Vinson,
    477 U.S. 57 (1986)..................................................... 10

Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills,
    815 F. Supp. 2d 679 (S.D.N.Y. 2011)..................................................... 9

Muldrow v. Blank,
    2014 WL 938475 (D. Md. Mar. 10, 2014)..................................................... 20

Niehoff v. SPS Techs., Inc.,
    2016 WL 6648618 (E.D. Pa. Nov. 10, 2016) ..................................................... 8, 17

Philpot v. Amtrak,
    2011 WL 5339030 (E.D. Pa. Nov. 3, 2011) ..................................................... 16

Popa v. Harriet Carter Gifts, Inc.,
    426 F. Supp. 3d 108, 116 (W.D. Pa. 2019)..................................................... 12

Pringle v. Wheeler,
    478 F. Supp. 3d 899 (N.D. Cal. 2020) ..................................................... 13

Randlett v. Shalala,
    118 F.3d 857 (1st Cir. 1997)..................................................... 17

Retzler v. McDonalds,
    2020 WL 1164797 (E.D. Pa. Mar. 10, 2020)..................................................... 12

Rigg v. Urana,
    113 F. Supp. 3d 825 (M.D.N.C. 2015) ..................................................... 20

Sanderson v. Wy. Hwy. Patrol,
    976 F.3d 1164 (10th Cir. 2020) ..................................................... 11

Senn v. Hickey,
    2006 WL 1891756 (D.N.J. July 10, 2006) ................................................................. 7

Shramban v. Aetna,
    262 F. Supp. 2d 531 (E.D. Pa. 2003) ................................................................. 7 ,12

Sprecher v. Se. Home Health Servs. of PA, LLC,
    2020 WL 3830148 (E.D. Pa. July 8, 2020) ................................................................. 18

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) ................................................................. 8, 11, 12

Taylor v. Temp-Air,
    758 F. Supp. 2d 563 (N.D. Ill. 2010) ................................................................. 14

Torre v. Casio, Inc.,
    42 F.3d 825 (3d Cir. 1994) ................................................................. 15

Toth v. Cal. Univ. of Pa.,
    844 F. Supp. 2d 611 (W.D. Pa. 2012) ................................................................. 12

Valentin v. Esperanza Hous. Counseling,
    834 F. App'x 745 (3d Cir. 2021) ................................................................. 15

Vill. of Tequesta v. Luscavich,
    240 So.3d 733 (Fla. Dist. Ct. App. 2018) ................................................................. 19

Wilkerson v. New Media Tech. Charter Sch. Inc.,
    522 F.3d 315 (3d Cir. 2008) ................................................................. 13

Williams v. Time Warner Inc.,
    440 F. App'x 7 (2d Cir. 2011) ................................................................. 9

Zhao v. State Univ. of N.Y.,
    472 F. Supp. 2d 289 (E.D.N.Y. 2007) ................................................................. 14

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Emily Sousa ("Plaintiff" or "Sousa"), by and through her undersigned counsel, Wigdor LLP, respectfully submits this memorandum of law in opposition to the Motion to Dismiss (the "Motion") the Second Amended Complaint ("SAC") filed by Defendants Amazon.com, Inc., Amazon.com Services LLC (together, "Amazon" or the "Company"), and Lawrence Dorsey ("Dorsey") (collectively, "Defendants"). The Motion should be denied.

## SUMMARY OF ARGUMENT

1.    Plaintiff's claims of *quid pro quo* and hostile work environment/sexual harassment are established by her direct manager Dorsey's persistent harassment of and pursuit of a sexual relationship with Sousa and his other sexual comments and conduct in the workplace. His sexual pursuit of Sousa and his hounding of Sousa for dates both before and after he retaliated against her for rebuffing him was confirmed by another supervisor. Dorsey's "Tell me you'll think about it" command to Sousa after her demotion confirms his intent throughout. His modus operandi with other female subordinates (and at least one other complaint about him) also reveals a pattern of conduct matching what he did with Sousa. His conduct creating a hostile environment also includes his erroneous and excited statement that Sousa was compared to an "Asian porn star," his comments on female subordinates' appearance (e.g., "she has a fat ass"), and favoring a female coworker who went along with dating him while he continued to harass Sousa. Dorsey's harassment was sufficiently severe to induce Sousa to take medical leave. Only discovery will reveal the record necessary to evaluate the legal issues (such as whether Dorsey made anonymous threatening calls to Sousa after her complaint to HR).

2.    Plaintiff's SAC alleges animus under Title VII and Section 1981 based upon her Japanese race/ethnicity/national origin through specific, direct statements by Dorsey regarding

those characteristics in a work context. He used stereotypes about Japanese women ("polite and non-confrontational") in critiquing Sousa's supposed work style. Another supervisor informed Sousa that Dorsey was excited by the idea that a manager had compared her to an "Asian porn star" and a coworker believed Dorsey had an "Asian fetish."

3.      Sousa pleads claims for discrimination, retaliation, and *quid pro quo* sexual harassment based upon multiple adverse actions. Dorsey's harassment, denial of a transfer on the same terms as a male coworker (who got promoted with it), her demotion by three levels (seriously harming her opportunity for a 2021 promotion, which she never received), distress caused by Dorsey sufficient to support a medical leave (resulting in lost income), Amazon's retaliatory refusal to transfer Sousa away from her harasser, and her resulting constructive discharge all are actionable. Discovery is needed to evaluate the extent and impact of these alleged actions on her employment, which can only be done properly with a full record.

4.      Plaintiff's retaliation claims allege animus (e.g., Dorsey's admitted intent to "humble" Sousa, post-demotion harassment, attempt to retaliate against another female coworker and anonymous calls to Sousa), and rapid progression from Sousa's protected activity (rejection of advances, complaint to HR) to the retaliatory acts (demotion, refusal to transfer, Dorsey's anonymous calls), and resulting harm (demotion, distress-induced leave and resulting loss of income, loss of promotion, denial of transfer to a safer position, constructive discharge).

5.      Under Third Circuit and other federal precedent, on a motion to dismiss, factual disputes are not to be weighed or construed against a plaintiff, such as whether harassment was "severe and pervasive" or an adverse action had the alleged effect on employment.

6.      Defendants' introduction of over 100 pages of collateral evidence, none of which is "incorporated by reference" into the Complaint, must be disregarded, and makes the Motion

procedurally inappropriate. The selective, cherry-picked communications and other documents (without any attendant testimony or other relevant records) demonstrates the need for discovery (and ultimately a trial) to resolve legion factual disputes, which cannot be done on the pleadings.

## STATEMENT OF FACTUAL ALLEGATIONS

Dorsey harassed Sousa by attempting over three months to force her into a sexual relationship and targeted her as an Asian/Japanese woman. During Sousa's first week, a male superior compared her to a pornographic film actress and told her "Women are too delicate to work at Amazon." ¶¶[1] 39-42. Sousa quit, but was reinstated and transferred to another facility (something Amazon refused to do several months later after she reported harassment by Dorsey). ¶¶ 43-45. Sousa was not over-sensitive and was willing to try again if she felt safe. Amazon opened a sham investigation that focused on the wrong time period and did not make a genuine effort to identify Sousa's harasser, showing its disregard for such complaints. ¶¶ 60-68.

Sousa did not get a fresh start, however, because days before Sousa started working with him, Dorsey told another supervisor about Sousa, "She's really pretty, I can't wait to work with her." ¶ 55. Dorsey also excitedly recounted that she had been compared to an "Asian porn star." ¶ 54. In fact, Sousa had not been compared to an *Asian* porn star, but to a *white* woman who appears in such films. These statements by Dorsey confirm his sexual interest in and intent to pursue Sousa, as well as his focus on her as an Asian woman. Once he was working with Sousa as her manager in the fall of 2020, Dorsey made frequent lengthy, unsolicited personal and harassing phone calls to Sousa, which included many inquiries into her availability for personal time with him, and sometimes lasted over an hour. ¶¶ 75-89, 100, 106-08, 111-13, 120, 185-93. This was not a mere handful of calls, and a full account of the communications would require document discovery, as

---

[1]       "¶" refers to the SAC.

3

well as testimony regarding their many other interactions. ¶¶ 76 (frequent texts), 97, 114, 122, 126-28, 132-34, 136, 140, 145-46, 153, 159-61, 195.

Dorsey directly referred to Sousa's Japanese heritage multiple times and tied her Japanese characteristics to his desire to spend private time with her. Dorsey did not just say he likes anime—he wanted to travel to Japan with her alone (they had known each other just a few weeks and he was her manager) and shared stereotypical beliefs that Japanese people (including Sousa) are "polite and non-confrontational" by "nature." ¶¶ 9, 83-86. Dorsey also repeatedly discussed his love life and his desire to "hang out" with Sousa outside of work and asked probing questions about her relationship with her boyfriend, including whether she was "available" for a relationship. ¶¶ 77, 80, 85-86, 108, 111-13, 121, 185-93. Sousa rebuffed these advances, on each occasion refusing or deflecting his requests and she told Dorsey several times that she had a boyfriend (an unmistakable "No," especially when expressed more than once). ¶¶ 12, 106, 119, 121. Indeed, Dorsey tried to use Sousa as a cat's paw to retaliate against another female subordinate who he was upset had told him, "I have a boyfriend." ¶¶ 95, 98.

Dorsey racially stereotyped Sousa in a work context, telling her to discipline subordinates more frequently and that she was "too soft" due to her Japanese "nature" to be non-confrontational (he did not do this with non-Asian coworkers). ¶¶ 133-35. Dorsey dangled the prospect of "helping" Sousa to get a promotion, which was clearly conditioned on her giving in to his advances. ¶ 107. Sousa rejected Dorsey's advances and conveyed that she was not interested, including by telling him she had a boyfriend, reminding Dorsey about his girlfriend, and telling him multiple times that she would not see him outside work unless in a group. ¶¶ 76, 87, 112, 119-21, 140, 188. Because of her repeated rejections, Dorsey ignored Sousa when she needed him and refused to help with work tasks. ¶¶ 103-04. This does not mean that they never spoke at or about

4

work (as Amazon falsely suggests the SAC alleges), but rather that Dorsey treated Sousa unfavorably, interfered with her doing her job and made it much more difficult once he concluded he would not get what he wanted from her sexually. ¶ 110.

Dorsey had a pattern of harassing and exploiting female subordinates, and Asian women particularly, which was well-known at Amazon. ¶¶ 92-94, 110-18, 122-125, 127-28. Dorsey habitually made sexual advances toward women he managed and gave them his phone number. ¶ 92. Sousa's coworkers described Dorsey as a "total creep," said he made them uncomfortable (as a woman), and a male observed that "he only wants to help the girls out." ¶¶ 93, 123, 128. Dorsey reportedly made similar advances towards another Asian subordinate, leading her to believe (along with his advances and clear designs on Sousa) he had an "Asian fetish." ¶ 124. Dorsey started dating (and presumably seeing sexually) another female subordinate who he began to favor and bend the rules for, in contrast to how he treated Sousa, who would not agree to go out with him. ¶¶ 109-10, 114-18.

After rejecting Dorsey's advances, Sousa also was denied a transfer opportunity on the same basis as a male Level 4 manager like her—he was given a promotion to Level 5 if he accepted, whereas she did not get this same offer (despite having more tenure). ¶¶ 136-38. She also was punished in late fall of 2020 with a three-level demotion that stripped her supervisory responsibilities, forced her to perform demanding physical labor of the sort performed by the lowest-ranking employees on a night shift far from her home during the busiest time of year, and substantially harmed her prospects for promotion (which she never received). ¶¶ 139-76. Dorsey admitted to Sousa the demotion was harmful, "humiliating" and he "wouldn't want to do it, but it can humble people." ¶¶ 161. He unmistakably conveyed that he intended to teach her a lesson for

not giving in, and he could affect her future at Amazon. Coworkers expressed outrage at the demotion and relief that they were not similarly demoted instead. ¶¶ 166-67, 172.

The demotion came at a critical time for consideration and evaluation for promotions, when employees like Sousa could demonstrate and meet about their skill and results during the Company's most important time of year, the holiday rush. ¶¶ 13-15, 147-58. By banishing Sousa at that time, she almost certainly was out of the running for any promotion, and she did not get a promotion in the spring of 2021, when at least one male colleague did. ¶¶ 137-38, 144. Sousa was not guaranteed a pay raise or a promotion, and her offer letter merely stated that consideration for such adjustments "[o]rdinarily . . . occurs in April." ¶ 143. The context and full effects of this demotion can only be determined through Amazon's records and testimony.

The harassment and retaliation took a serious toll on Sousa's mental and physical wellbeing of a young woman starting her first job out of college. ¶¶ 2, 177-83, 210. Her symptoms became so severe after the demotion that, on December 1, 2020, Sousa advised Dorsey she was resigning. ¶ 184. Ultimately, Sousa took a medical leave (recommended by her doctor and approved by the Company) until July 2021. ¶¶ 177-93. While on leave, Sousa reported Dorsey's behavior in January 2021. ¶ 194. Amazon conducted a second sham inquiry that found her allegations "unsubstantiated." ¶¶ 197-204. The basis for and scope of this finding is unknown and must be examined in discovery, especially if it is to be weighed at all.

Throughout her leave, Sousa asked to transfer to a facility away from Dorsey. ¶¶ 206-09. Amazon told Sousa she could not transfer while on leave (although they previously transferred her without requiring her to return to work with her harasser). ¶ 207. While on leave and after Amazon concluded its "investigation," Sousa received many harassing phone calls, apparently from Dorsey. ¶¶ 217-32. In March 2021, Sousa received anonymous calls from someone who sounded

like Dorsey but refused to identify himself. ¶¶ 219-29. During these frightening calls, which Sousa believed to be from Dorsey, the anonymous caller asked, "Do you know who this is?," urged Sousa to "guess," told Sousa he was "definitely" someone she knew, and said, "You know what I want." ¶¶ 219-27. Based upon Dorsey's sustained harassment (even in the face of Sousa's obvious distress), retaliation, and her legitimate fears for her safety (particularly after the threatening, anonymous calls from Dorsey), Sousa could not reasonably have returned to work with him, a harasser who had power over her job. Sousa was constructively discharged when Amazon retaliatorily refused to transfer her for no credible reason. ¶¶ 214-16, 232.

## ARGUMENT

## I.   STANDARD OF REVIEW

In ruling on a motion under Rule 12(b)(6), "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." Daoud v. City of Wilmington, 894 F. Supp. 2d 544, 550 (D. Del. 2012) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).[2] It is not appropriate for the court to "[m]ake factual determinations . . . during the determination of a motion to dismiss where all of the allegations in the [c]omplaint must be taken as true, and viewed in the light most favorable to the [p]laintiff." Senn v. Hickey, 2006 WL 1891756, at *3 (D.N.J. July 10, 2006). A complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The standard is "plausible"—not "proof" or even "convincing"—and if there is disagreement on the significance of alleged facts, so long as the claims are not rendered legally implausible, discovery should be conducted to shed light. "Even post-Twombly . . . a plaintiff is

---

[2]      See also Bingaman v. Buhay, 2007 WL 707026, at *3 (M.D. Pa. Mar. 2, 2007) ("We do not weigh evidence in considering a motion to dismiss.").

not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Fowler v. UPMC Shadyshide</u>, 578 F.3d 203, 213 (3d Cir. 2009).[3]

## II. THE EXHIBITS DEFENDANTS IMPROPERLY ATTACHED TO THEIR COMPLAINT SHOULD BE DISREGARDED—THE EXHIBITS ARE SELECTIVE AND WERE NOT INCORPORATED INTO THE SAC

Defendants have improperly attached more than 116 pages of exhibits to their Rule 12(b)(6) Motion, asserting that these specific communications are supposedly "incorporated by reference" into the SAC, while omitting untold other communications and evidence. This selective introduction of evidence beyond the Complaint on a motion to dismiss should invalidate the Motion, which is permeated with arguments relying on those materials. Defendants have cherry-picked their own record and are attempting to dress up a premature motion for summary judgment (based on a hand-picked, unilateral set of documents) as a motion to dismiss. There has not been any exchange of document requests or productions, testimony taken, or any opportunity to cure Defendants' premature document production of deficiencies. Defendants' Motion should be rejected for this reason alone and discovery ordered. At a minimum, any part of Defendants' Motion that includes or depends on these materials should be stricken, disregarded, and/or denied.

---

[3]      <u>See</u> <u>also</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514-15 (2002) ([A]n employment discrimination plaintiff need not plead a prima facia case of discrimination."); <u>Martinez v. UPMC Susquehanna</u>, 986 F.3d 261, 266 (3d Cir. 2021) (stating "it is not necessary" to plead a *prima facie* case to defeat a motion to dismiss); <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 788-89 (3d Cir. 2016) ("[A] complaint need not establish a prima facie case in order to survive a motion to dismiss."); <u>Niehoff v. SPS Techs., Inc.</u>, 2016 WL 6648618, at *5 (E.D. Pa. Nov. 10, 2016) (The "[p]laintiff does not have to elect at the pleading stage whether his evidence of discrimination will be direct or indirect. Thus, it is incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits **if direct evidence of discrimination is discovered**.") (emphasis added). Sousa provides much more factual support for her discrimination, harassment, and retaliation claims than other plaintiffs whose complaints have gone forward to discovery.

The factual arguments made by Defendants using these materials also show why discovery is necessary to resolve the fact-intensive issues here.

Documents are only incorporated by reference where the complaint "make[s] a clear, definite and substantial reference to the documents." Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the documents into the complaint itself." Williams v. Time Warner Inc., 440 F. App'x 7, 9 (2d Cir. 2011). "Incorporation by reference" does not refer to a mention of emails or phone calls, and a party cannot introduce whatever selective documents they wish—that is flagrantly against the Federal Rules and would impermissibly allow consideration of an incomplete, one-sided record.[4] This is not, for example, a case that turns on the language of a single, integral contract.

Glaringly, Defendants do not explain how these documents are incorporated by reference and rely upon In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997), which did not involve a document incorporated by reference. Id. at 1426 (analyzing whether to consider a document "neither attached to, nor referred to, in the [c]omplaint;" court allowed in one document consisting of a company's costs data). The SAC does not reference any of the attached documents sufficiently to "incorporate" them. See Mosdos Chofetz Chaim, Inc., 815 F. Supp. 2d at 691. The references to the documents (or types of materials) attached by Defendants in the SAC are general in nature: Defendants' Exhibit A (email chain referred to in ¶¶ 199-200); Exhibit B (13 pages of texts, with only one quoted (¶ 195) and no ability to gauge completeness); Exhibit C (92

---

[4]    See also Friedman v. Lansdale Parking Auth., 151 F.R.D. 42, 44 (E.D. Pa. 1993) ("A document will not be considered incorporated by reference if only limited quotations are used in the complaint."); Khoja v. Orexigen Therapeutics, Inc., 498 F. Supp. 3d 1296, 1305 (S.D. Cal. 2020) ("The mere mention of the existence of a document is insufficient to incorporate the contents of a document.").

pages of Chime messages, with such messages referenced in only ¶¶ 50, 103, 184); Exhibit D (timeline prepared by Plaintiff for investigator, mentioned in ¶ 200 and presumably one of many documents related to Plaintiff's complaint); Exhibit E (incomplete phone records; SAC does not mention phone records); Exhibit F (eleven pages of texts consisting of selective "screenshots" from Dorsey's phone). Defendants' Motion (or at a minimum the exhibits and all related arguments) should be stricken and discovery should go forward, as introduction of these documents demonstrates the need for a full factual record.

**III.   DORSEY'S CONDUCT SHOWS SEXUAL/ROMANTIC PURSUIT OF SOUSA AND OTHER ACTS TOWARDS WOMEN THAT SUPPORT CLAIMS FOR *QUID PRO QUO* AND HOSTILE ENVIRONMENT SEXUAL HARASSMENT**

Dorsey's sexual harassment of Sousa obviously targeted her as a woman on the basis of her sex/gender, and he engaged in such acts towards various female subordinates. ¶¶ 91-99, 109-12, 114-18, 122-24, 128. Plaintiff's SAC shows Dorsey, as Sousa's manager, engaged in a pattern of unwelcome harassment to push her into a sexual relationship, and that the terms and conditions of her employment were adversely affected after she consistently rejected his advances. ¶¶ 8-9, 12-15, 103-04, 139-40, 159-61. The stress and anxiety of the harassment (and retaliation) forced Sousa onto medical leave, resulting in lost income (unpaid leave) and ended in her constructive discharge after harassing anonymous calls to Sousa, seemingly from Dorsey. ¶¶ 177-93, 217-32. Dorsey's conduct towards Sousa and other women apart from his harassing calls and pressuring of Sousa into a relationship also goes to the sexually hostile work environment.

The SAC's allegations of *quid pro quo* harassment are not subject to a "severe and pervasive" standard. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). Courts also seldom determine whether allegations rise to "severe or pervasive" harassment based solely on the complaint given the fact-intensive nature of the analysis and potential for discovery to shed light

on the allegations. <u>Castleberry v. STI Grp.</u>, 863 F.3d 259, 266 (3d Cir. 2017) ("[A] claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established."). Employment discrimination claims generally defeat motions to dismiss because "before discovery has unearthed relevant facts and evidence, it may be difficult" to prove discrimination. <u>Swierkiewicz</u>, 534 U.S. at 512.

Defendants seek factual determinations that are not permitted on the pleadings under Rule 12. Defendants assert Dorsey did not make any "sexual demands," but this is false and the wrong inquiry—Dorsey pursued private, romantic time alone with Sousa for around three months, complete with inquiries about her romantic availability (before and after her demotion) and statements to others showing sexual interest in her. Dorsey was known as a serial harasser of female subordinates and would comment on female employees' bodies and appearance, with at least one other woman having complained about him, and another agreeing to date him while working for him in October 2020. ¶¶ 9, 55, 93, 95-98, 109-12, 124, 196. In evaluating hostile environment claims, courts consider all alleged incidents known to and impacting the plaintiff, not just those directly experienced by her. <u>Sanderson v. Wy. Hwy. Patrol</u>, 976 F.3d 1164, 1175 (10th Cir. 2020) ("[T]he very term 'environment' indicates that allegedly discriminatory incidents should not be examined in isolation."); <u>Hicks v. Gates Rubber Co.</u>, 833 F.2d 1406, 1415 (10th Cir.1987) ("Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.").

"Sexual demands" need not be explicit (harassers could easily dodge liability) and a factfinder must assess on an evidentiary record whether unwanted advances were made and "sexually motivated." <u>Bryson v. Chicago St. Univ.</u>, 96 F.3d 912, 915 (7th Cir. 1996); <u>Hodges v. Gellerstedt</u>, 833 F. Supp. 898, 901 (M.D. Fla. 1993) ("trier of fact must determine the existence of

11

such harassment in light of the record as a whole and in the totality of the circumstances as to the sexual nature of the conduct.").

Defendants' cited cases are inapposite either because they are based upon motions for summary judgment, and therefore, were decided on a different standard and after discovery, or they concern weaker, dissimilar allegations. In Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545 (3d Cir. 2017), the Third Circuit was *only* deciding whether a medical resident could bring a claim under Title IX, not Title VII, and did not consider the substance of the *quid pro quo* claims. Id. at 565-66. Reliance upon Retzler v. McDonalds, 2020 WL 1164797, at *3 (E.D. Pa. Mar. 10, 2020) (stray remarks by co-workers, not supervisors) and Little v. Chambersburg Hosp., 2012 WL 1048820, at *4 (M.D. Pa. Mar. 28, 2012) (plaintiff failed to "aver, or even imply, that she personally was discriminated against") is similarly misplaced. It is telling that nearly every case Defendants rely upon regarding the hostile work environment claims was decided on a summary judgment basis, a wholly different standard from that under Rule 12.[5] "It is axiomatic that the standards for dismissing claims under [Rule] 12(b)(6) and granting [summary] judgment are vastly different." Fowler, 578 F.3d at 213. Defendants also cite an appeal from trial. Ferguson v. E.I. duPont de Nemours & Co., 560 F. Supp. 1172 (D. Del. 1983). Plaintiff is not required to (nor could most employees) present an encyclopedic, fully formed evidentiary record in her complaint

---

[5]    See, e.g., LaMarca v. City of Niagra Falls, 2016 WL 8674161 (W.D.N.Y. Feb. 12, 2016); Allen v. Mo., 2013 WL 2156259 (E.D. Mo. May 17, 2013); Gazdick v. Solis, 2013 WL 1909576 (M.D. Pa. May 8, 2013); Grady v. Cracker Barrel Old Country Store, Inc., 2007 WL 1959298 (M.D. Pa. July 2, 2007); Toth v. Cal. Univ. of Pa., 844 F. Supp. 2d 611 (W.D. Pa. 2012); Shramban v. Aetna, 262 F. Supp. 2d 531, 534-36 (E.D. Pa. 2003); Joiner v. Wal-Mart Stores, Inc., 114 F. Supp. 2d 400 (W.D.N.C. 2000); Harrison-Harper v. Nike, Inc., 2018 WL 4614158 (E.D. Pa. Sep. 24, 2018); Brown-Baumbach v. B&B Auto, Inc., 437 F. App'x 129 (3d Cir. 2011) (reversing the trial court's grant of summary judgment).

without any production of evidence by Defendants. <u>Swierkiewicz</u>, 534 U.S. at 515; <u>Popa v. Harriet Carter Gifts, Inc.</u>, 426 F. Supp. 3d 108, 116 (W.D. Pa. 2019).

Defendants misrepresent the SAC's allegations in downplaying the frequency and nature of Dorsey's conduct, seeking impermissible factual inferences in their favor that misconstrue the SAC. A plaintiff's allegations will necessarily involve approximations (number of occurrences, dates, etc.) and some general allegations—this alone does not entitle defendants to dismissal, even after discovery (much less on the pleadings). <u>Wilkerson v. New Media Tech. Charter Sch. Inc.</u>, 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."); <u>Bowlen v. Coloplast A/S</u>, 2019 WL 4597570, at *2 (W.D. Pa. Sep. 23, 2019) (motion to dismiss standard "does not require the plaintiff to identify every fact that will be needed to prevail on the applicable legal theory").

"Objectively lewd" conduct is not required to allege "severe" hostile work environment harassment. Particularly at the pleading stage, before discovery, the true factual issues and details needed to assess the claims cannot be determined. <u>Pringle v. Wheeler</u>, 478 F. Supp. 3d 899, 915 (N.D. Cal. 2020) (it "is not appropriate at the pleadings stage" to "factually challenge the severity or pervasiveness of [plaintiff's] allegations."). Dorsey was senior to Sousa and her direct supervisor during most of the harassment and all of the subsequent retaliation. <u>Huston v. Proctor & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 107 (3d Cir. 2009) (employees need only be "senior" to victims of harassment for knowledge to be imputed to the employer). Dorsey controlled the terms and conditions of Sousa's employment, including denying her a transfer on equal terms, demoting her and other job decisions—his actions (even those relayed by others) would greatly alter her work environment. ¶¶ 103-04, 107, 132-38, 139-40, 159-61.

IV.     **SPECIFIC FACTUAL ALLEGATIONS SHOWING A FIXATION BY DORSEY ON SOUSA'S JAPANESE CHARACTERISTICS SUPPORT AN INFERENCE OF DISCRIMINATION BASED ON RACE, ETHNICITY, AND NATIONAL ORIGIN**

The SAC provides specific examples of direct discussion of Sousa's Japanese characteristics by Dorsey. ¶¶ 8, 54, 83-86, 133-34. He did not merely mention that Sousa is Japanese. Rather, he made it a focus of why he wanted to spend personal time with Sousa and how he viewed her as an employee, and other employees confirmed his pattern of conduct and his sexual interest in her on that basis. Discussions of an employee's race or other characteristics need not be pejorative or negative to indicate bias. Zhao v. State Univ. of N.Y., 472 F. Supp. 2d 289, 310 (E.D.N.Y. 2007) (stereotyping can be discriminatory even where "the stereotyping involved positive attributes that could have initially favored a plaintiff"); see also Taylor v. Temp-Air, 758 F. Supp. 2d 563, 668 (N.D. Ill. 2010) (comments are "actionable where they betoken an employer's reliance upon impermissible ... stereotypes"). Dorsey focused on Japanese culture, (supposed) traits, and customs with Sousa, said he wanted to travel to Japan with her alone, and used the racist stereotype that Japanese people are "polite and non-confrontational" in critiquing her as an employee. ¶¶ 83-86, 133-35. He also made advances towards another Asian female employee who believed Dorsey had an "Asian fetish." ¶¶ 9, 124. Indeed, Dorsey assumed Sousa had been compared to an Asian adult film star and could not keep his excitement at this to himself. ¶¶ 9, 54, 125.

Defendants misleadingly cite Adetoro v. King Abdulla Acad., 2020 WL 7122858, at *4 (D.D.C. Dec. 4, 2020), asserting that a Section 1981 claim must be dismissed where a plaintiff offers "a buffet of reasons other than race." Unlike Sousa, who alleges race-based claims under Section 1981 and Title VII, the Adetoro plaintiffs brought only Section 1981 claims based almost entirely on national origin and religion, which are not covered by Section 1981. Id. at *5-6. Sousa's

Asian/Japanese characteristics overlap and relate to each other. Alternative causes of action do not negate "but-for" causation, especially at the pleading stage. "Often, events have multiple but-for causes." Bostock v. Clayton Cnty., Ga., 140 S.Ct. 1731, 1739 (2020); see also McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1075 (11th Cir. 1996) ("'because of' does not mean 'solely because of.'"). Defendants' other cases similarly do not apply here.[6]

## V.    SOUSA HAS ALLEGED ADVERSE EMPLOYMENT ACTIONS, INCLUDING LOSS OF PROMOTION, CONSTRUCTIVE DISCHARGE, DEMOTION, AND HARASSMENT (WHICH ALSO DROVE HER INTO MEDICAL LEAVE)

The harassment of Sousa (sufficiently severe and pervasive to drive her onto a medically approved leave) is itself an adverse employment action under Title VII and Section 1981. Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1264 (10th Cir. 1998); Hilt-Dyson v. City of Chicago, 282 F.3d 456, 466 (7th Cir. 2002); see also Faragher v. City of Boca Raton, 524 U.S. 775, 786-88 (1998) (severe and pervasive harassment affects a term, condition, or privilege of employment). Because of the actions stated in Plaintiff's harassment, discrimination and retaliation claims, Sousa was not only driven to take a medical leave by the distress caused, but she also lost income as a result of her unpaid leave and lost or denied promotion opportunities. Curry v. Devereux Found., 541 F. Supp. 3d 555, 559 (E.D. Pa. 2021) ("When an individual is denied promotion, they are deprived of additional income and may also experience the anxiety that accompanies professional stagnation."). Sousa's lost 2021 promotion and the failure to offer her a promotion on the same basis as a male coworker in November 2020 are clear adverse actions. ¶¶ 136-38, 143, 147-58.

---

[6]    See Comcast Corp. v. Nat'l Assoc. of African-American Owned Media, 140 S.Ct. 1009 (2020) (only Section 1981 claim pled; declining to extend Title VII's motivating factor test to Section 1981); Valentin v. Esperanza Hous. Counseling, 834 F. App'x 745, 746-47 (3d Cir. 2021) (plaintiff gave several non-actionable reasons for alleged discriminatory action).

The SAC further explains how Sousa's demotion was a cognizable adverse action, as it materially affected terms and conditions of employment, including by seriously and by design harming her prospects for promotion (which she <u>did not get</u> in spring 2021). ¶ 144. Worksite transfers also can be adverse actions. <u>See</u>, <u>e.g.</u>, <u>Torre v. Casio, Inc.</u>, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (material fact issue created where plaintiff was transferred with no change to pay and benefits); <u>de la Cruz v. NYC Human Res. Admin. Dep't of Soc. Serv.</u>, 82 F.3d 16, 21 (2d Cir. 1996) (transfer to position with lower prestige and less opportunity for professional growth demonstrated adverse action). That Sousa's compensation did not change during the demotion is merely an "indicator of a tangible adverse employment action, it is not the sine qua non." <u>Durham Life Ins. v. Evans</u>, 166 F.3d 139, 153 (3d Cir. 1999).[7]

Where "an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." <u>Id.</u> Sousa was demoted by *three levels* to do manual labor during the peak holiday season on an overnight shift, hours from her home, during the time Amazon evaluates employees for promotions (performance and meetings during peak season are key). ¶¶ 139-58, 174-75. Even Dorsey believed Sousa's demotion would have a chilling effect on Sousa and

---

[7]     The SAC names several similarly situated non-Asian and male employees who were not subjected to such unlawful treatment by Dorsey. ¶¶ 137-38, 146-49, 151. <u>Henson v. City of Dundee</u>, 682 F.2d 897, 904 (11th Cir. 1982) ("In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion."); <u>Irwin v. Fry Comms., Inc.</u>, 2021 WL 5756386, at *7 (M.D. Pa. Aug. 17, 2021) ("Determining whether an individual is similarly situated to another individual is a case-by-case fact-intensive inquiry . . . [and] a final determination of this issue is inappropriate at the motion to dismiss stage."). Defendants cite <u>Philpot v. Amtrak</u>, 2011 WL 5339030 (E.D. Pa. Nov. 3, 2011), an inapplicable summary judgment case, to argue erroneously that Sousa must allege her comparators are "similarly situated to her in all relevant respects." MTD p. 11. In fact, "the law of the Third Circuit does not require the plaintiff to show that the [comparators] are identical in all relevant respects but only that they are alike." <u>Borrell v. Bloomsburg Univ.</u>, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013) (internal brackets omitted).

confirmed that others also would find it highly undesirable and be "humbled" by it, admitting the demotion's punitive and retaliatory intent and impact. ¶¶ 12, 161. Dorsey took from Sousa the opportunity to be considered for a promotion on the same terms as her peers, and she did not get promoted in 2021 when she was supposed to be eligible. ¶¶ 13, 144, 154-58. He did the same when he discriminatorily and retaliatorily did not offer her a promotion in connection with an earlier possible transfer on equal terms. ¶¶ 136-38. Loss of promotion is unquestionably an adverse action and actionable harm. Curry, 541 F. Supp. 3d at 559; Brown v. R.R. Grp. LLC, 350 F. Supp. 3d 300, 304 (D.N.J. 2018).

Defendants also argue that refusing to transfer an employee (as Amazon did in 2021) is not an adverse action. This is false. See Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) (denial of a transfer was an adverse action). Discovery is needed on Amazon's real policies and procedures, as well as the decision-making and basis behind the denial of transfer, which absolutely had a major effect on whether Sousa could return to work without fear of further harassment and retaliation. There was no guarantee whatsoever that Amazon would transfer Sousa promptly or at all (nor does Amazon make such a claim). Discovery is needed on the denial of transfer and, by extension, constructive discharge.

Although Goss v. Exxon Office Sys., 747 F.2d 885, 888 (3d Cir. 1984), states that constructive discharge occurs where "a reasonable person would feel compelled to resign" (MTD p. 20), Defendants improperly apply this standard at the dismissal stage, calling for improper factual inferences contrary to the SAC. See Niehoff v. SPS Techs., Inc., 2016 WL 6648618, at *5 (E.D. Pa. 2016) (argument that plaintiff failed to state a claim for constructive discharge was "without merit" because "it is not appropriate for the court to delve into such a fact intensive question on a motion to dismiss.") (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 232 n.7

17

(3d Cir. 2006)). Indeed, Goss involved an appeal by the plaintiff after a final judgment and award in her favor. Id. at 887. Defendants' reliance on Konstantopoulos v. Westvaco Corp., 112 F.3d 710 (3d Cir. 1997), also is misplaced, as the case involved an appeal after a trial, after the case was permitted to go through discovery. Id. at 714.

## VI.   DEFENDANTS' ACTIONS AGAINST SOUSA SHORTLY AFTER HER LEGALLY PROTECTED ACTIVITY SHOW RETALIATORY ANIMUS

Defendants' retaliation against Plaintiff and Dorsey's pattern of harassing and retaliating against female subordinates are detailed in the SAC. ¶¶ 91-93, 95-98, 109-12, 114-18, 122-24, 128. Dorsey harassed Sousa, and when she was unreceptive, he quickly retaliated by negatively altering her terms and conditions of employment. ¶¶ 103-04, 136-40, 159-61. Harassment and retaliation (including the demotion) made her ill and caused her to take medical leave, with further harassment and retaliation following her complaint to HR and leading to her constructive discharge. ¶¶ 17, 177-83, 214-16. This alleged conduct strongly supports an inference of retaliatory animus, and discovery would always be necessary to obtain the type of evidence (e.g., testimony by third parties, other employee complaints, etc.) that would support such allegations.

### A.   Plaintiff Engaged in Legally Protected Activity by Refusing Dorsey's Advances and Reporting His Conduct to Amazon

Plaintiff engaged in legally protected activity at several points, first in repeatedly rebuffing Dorsey's harassment and then in reporting his conduct to HR. ¶¶ 76, 87, 112, 119-21, 140, 187-90, 194. An employee's rejection of a harasser constitutes legally protected activity. Farrell v. Planters Lifesavers Co., 22 F. Supp. 2d 372, 392 (D.N.J. 1998) ("[R]ejecting sexual advances itself must comprise protected activity for which employees should be protected for opposing."), rev'd on other grounds, 206 F.3d 271 (3d Cir. 2000) (noting the determination that rejection of sexual advances is protected activity was not questioned on appeal); Sprecher v. Se. Home Health Servs.

18

of PA, LLC, 2020 WL 3830148, at *4 (E.D. Pa. July 8, 2020); Armbruster v. Epstein, 1996 WL 289991, at *3 (E.D. Pa. May 31, 1996) ("[R]efusing sexual advances itself should be viewed as protected conduct under anti-discrimination law, for which employees should not be made to fear retaliation.").

In contrast to the Third Circuit authority above, Defendants rely on one out-of-circuit summary judgment case involving a single rejection of a supervisor's advances. LeMaire v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 389 (5th Cir. 2007).[8] Defendants also cite Cloud v. Brennan, 436 F. Supp. 3d 1290 (N.D. Cal. 2020), for the factually specious proposition that if rejection of sexual advances was classified as protected activity "every harassment claim would automatically state a retaliation claim as well" (which ignores or fails to conceive of scenarios where a harassed employee is forced to give in or could not object to harassment). MTD p. 19, n. 17. Courts have found that "conceiving protected activity so narrowly overlooks the complex dynamics underlying a work environment fraught with power disparities." Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 85 (E.D.N.Y. 2020) (quoting Hughes, 304 F. Supp. 3d at 448). In Hughes, the court stated:

> Sexual harassment can manifest itself in many forms. Some are less obvious than others but just as invidious. Formally reporting an incident of sexual assault is one form of protected activity, but it is not always available. An individual who is sexually harassed by her supervisor, or someone with clout within the company, faces a Hobson's choice—she is either forced to endure her supervisor's unwanted overtures, or file a complaint that will inevitably bruise his ego and jeopardize her job and career.

---

[8]    See, e.g., Vill. of Tequesta v. Luscavich, 240 So.3d 733, 742 (Fla. Dist. Ct. App. 2018) (recognizing circuit split, declining to follow LeMaire, and criticizing the decision because "there was little legal reasoning offered to support the conclusion."); Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018) (plaintiff "engaged in protected activity each time she rejected" the defendant's sexual advances.).

Hughes, 304 F. Supp. 3d at 448.

Plaintiff engaged in protected activity when she reported Dorsey's conduct in January 2021, which preceded her lost 2021 promotion, denial of transfer, and constructive discharge. ¶ 194. Amazon's denial of a transfer for Sousa in 2021 was transparently retaliatory, given its earlier transfer of Sousa following harassment (even when they supposedly could not identify her harasser). There is no credible reason they could not transfer an employee on leave rather than force her to return to work under her harassing manager for an indefinite period. ¶¶ 44, 206-11.

Defendants falsely suggest that all of Sousa's rejections and/or rebuffing of Dorsey's harassment happened three months before the alleged adverse actions. Not only did some harassment/rejections happen only a month before the November 2020 denial of promotion opportunity and demotion (¶¶ 106-19, 136-38), additional retaliation (denied promotion, harassing anonymous calls, refusal of transfer, constructive discharge) followed Sousa's 2021 complaint to HR and the investigation's conclusion. Further, a three-month period easily can support temporal proximity (generally assessed on summary judgment), particularly coupled with other continuing and escalating events. Muldrow v. Blank, 2014 WL 938475, at *12 (D. Md. Mar. 10, 2014) (two months); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (four months). Dorsey's rising retaliatory animus is demonstrated by his "cold shoulder" treatment of Sousa after she rejected his first few weeks of advances, drawing a connection from the earlier harassment and the demotion.[9] ¶¶ 103-04. Defendants cite Rigg v. Urana, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015), but that case

---

[9]      Defendants argue, referencing their improperly attached documents, that "starting in mid-October . . . Dorsey responded to every one of Sousa's work-related questions and requests through the end of her employment." MTD p. 10. Not only is this a dubious factual assertion, it is completely inappropriate on a motion to dismiss. Their selectively presented messages ignore several times Dorsey ignored Sousa's messages in October 2020. See, e.g., Ex. C at 27, 45. Defendants' entirely new fact arguments about Dorsey's response time make a mockery of the notion that their exhibits were "incorporated by reference" into the SAC.

involved a time gap of around two years, and the plaintiff sought no damages. Id. at 827, 829.
Further, it is a strong indicator of retaliatory animus that Dorsey outright told Sousa that she should
find his demotion of her "humbling" and then renewed his demand that she "consider" a
relationship with him, as well as his anonymous threatening phone calls.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss should be denied in its
entirety.

**ALLEN & ASSOCIATES**

/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Emily A. Biffen (#6639)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
emily@allenlaborlaw.com

Of Counsel:

Lawrence M. Pearson, Esq.
Anthony G. Bizien, Esq.
Admitted *Pro Hac Vice*
Wigdor Law LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
lpearson@wigdorlaw.com
abizien@wigdorlaw.com
*Attorneys for Plaintiff*

Dated: March 23, 2022