# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Emily Sousa,<br><br>        Plaintiff,<br><br>    v.<br><br>Amazon.com, Inc., Amazon.com Services LLC, and Lawrence Dorsey,<br><br>        Defendants. | Civil Action No. 21-717-SB |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AND LAWRENCE DORSEY'S MOTION TO DISMISS PLAINTIFF'S <u>SECOND AMENDED COMPLAINT</u>

OF COUNSEL:
Jason C. Schwartz (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202-955-8242
Email: JSchwartz@gibsondunn.com

Jessica Brown (*pro hac vice*)
Hannah Regan-Smith (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Ste. 4200
Denver, CO 80202-2642
Tel.: 303-298-5700
Email: JBrown@gibsondunn.com
        HRegan-Smith@gibsondunn.com

Beth Moskow-Schnoll (No. 2900)
Juliana van Hoeven (No. 6498)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel.: 302-252-4465
Email: moskowb@ballardspahr.com
        vanhoevenj@ballardspahr.com

*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, and Lawrence Dorsey*

Dated: April 11, 2022

**TABLE OF CONTENTS**

Page

I. ARGUMENT ................................................................................................................... 2

    A. Sousa Has Not Alleged Disparate Treatment............................................................ 2

    B. Sousa Fails to Allege But-For Cause Required by Section 1981 ............................. 5

    C. Sousa Has Not Alleged a Hostile Work Environment ............................................. 5

    D. Sousa Has Not Alleged Quid-Pro-Quo Harassment................................................. 7

    E. Sousa Has Not Alleged She Was Retaliated Against............................................... 8

    F. The Court May Consider the Text Messages and Phone Call Logs Sousa Relies On ............................................................................................................... 9

II. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bates v. Tandy Corp.*,
  186 F. App'x 288 (3d Cir. 2006) ..................................................................................................4

*Betz v. Temple Health Systems*,
  659 F. App'x 137 (3d Cir. 2016) ...............................................................................................5, 6

*Borrell v. Bloomsburg University*,
  955 F. Supp. 2d 390 (M.D. Pa. 2013) ..........................................................................................4

*Bowlen v. Coloplast A/S*,
  2019 WL 4597570 (W.D. Pa. Sept. 23, 2019) .............................................................................6

*Bryson v. Chicago State University*,
  96 F.3d 912 (7th Cir. 1996) .........................................................................................................7

*Burgess v. Dollar Tree Stores, Inc.*,
  642 F. App'x 152 (3d Cir. 2016) ..................................................................................................1

*Castleberry v. STI Group*,
  863 F.3d 259 (3d Cir. 2017) ........................................................................................................6

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) ......................................................................................................10

*Culler v. Secretary of U.S. Veterans Affairs*,
  507 F. App'x 246 (3d Cir. 2012) ..................................................................................................1

*Curry v. Devereux Foundation*,
  541 F. Supp. 3d 555 (E.D. Pa. 2021) ...........................................................................................4

*de la Cruz v. NYC Human Resources Administration*,
  82 F.3d 16 (2d Cir. 1996) ............................................................................................................3

*Durham Life Ins. Co. v. Evans*,
  166 F.3d 139 (3d Cir. 1999) ........................................................................................................3

*Gunnell v. Utah Valley State College*,
  152 F.3d 1253 (10th Cir. 1998) ...................................................................................................2

*Harris v. N.Y. State Comptroller*,
  2022 WL 814289 (S.D.N.Y. Mar. 17, 2022) .............................................................................10

*Hilt-Dyson v. City of Chicago*,
  282 F.3d 456 (7th Cir. 2002) .......................................................................................................2

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Hudson v. Ralph Lauren Corp.*,
  385 F. Supp. 3d 639 (N.D. Ill. 2019) ....................................................................................... 10

*Jennings-Fowler v. City of Scranton*,
  680 F. App'x 112 (3d Cir. 2017) ........................................................................................... 1, 6

*Kaplan v. Wings of Hope Residence, Inc.*,
  2020 WL 616630 (E.D.N.Y. Feb. 7, 2020) ............................................................................. 10

*Kohinchak v. U.S. Postmaster General*,
  677 F. App'x 764 (3d Cir. 2017) ............................................................................................... 6

*Leibovitz v. N.Y.C. Transit Authority*,
  252 F.3d 179 (2d Cir. 2001) ...................................................................................................... 7

*Lopez-Serrano v. Rockmore*,
  132 F. Supp. 3d 390 (E.D.N.Y. 2015) ..................................................................................... 10

*McKenna v. VCS Group LLC*,
  2009 WL 3193879 (D. Conn. 2009) .......................................................................................... 6

*McLintock v. City of Philadelphia*,
  504 F. Supp. 3d 411 (E.D. Pa. 2020) ......................................................................................... 4

*Molchan v. Delmar Fire Department, Inc.*,
  2020 WL 264142 (D. Del. Jan. 17, 2020) .................................................................................. 6

*Randlett v. Shalala*,
  118 F.3d 857 (1st Cir. 1997) ...................................................................................................... 8

*Torre v. Casio, Inc.*,
  42 F.3d 825 (3d Cir. 1994) ......................................................................................................... 3

*Tourtellotte v. Eli Lilly & Co.*,
  636 F. App'x. 831 (3d Cir. 2016) ............................................................................................... 7

*Wilkerson v. New Media*,
  522 F.3d 321 (3d Cir. 2008) ....................................................................................................... 6

Sousa's Second Amended Complaint, D.I. 28 ("SAC"), should be dismissed, just like her last one, because she has not, and cannot, plead *factual* allegations permitting a reasonable inference that Defendants discriminated and retaliated against her.  Her Opposition, D.I. 39 ("Opp."), like her SAC, is filled with conclusory and exaggerated *characterizations* of her factual allegations.  But Sousa's own characterizations and conclusions are due no weight—she is only entitled to *reasonable* inferences from her well-pleaded *facts*.  Her insufficient pleading is also why—in stark contrast to Defendants' methodical, claim-by-claim, element-by-element analysis of her deficient claims— Sousa again refuses to analyze her alleged facts under any clear theory, instead haphazardly lumping together various claims and issues.  *See, e.g.*, Opp. 11, 15.

It is also why Sousa incorrectly argues, at every turn, that it is inappropriate for the Court to assess the sufficiency of her allegations prior to discovery.  *See* Opp. 2–4, 11, 13, 17.  But Courts routinely dismiss employment harassment and discrimination claims on the pleadings where, as here, the facts alleged do not rise to the requisite level.  *E.g.*, *Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249–50 (3d Cir. 2012) (affirming judgment on the pleadings where facts alleged could not support finding that the workplace "was permeated with discriminatory intimidation, ridicule, and insult") (quotation marks omitted); *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 118 (3d Cir. 2017) (affirming dismissal of hostile workplace claim); *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (same).

Finally, a cursory review of the text messages and phone records incorporated by reference in and integral to Sousa's pleading reveals that even her insufficient allegations are flatly contradicted by the records underlying them.  Mot. 10, 15–16; *see also infra* at 9.  While it is not necessary for the Court to consider these records to dismiss Sousa's pleading again, it is telling that Sousa is so adamant that the Court not look at them.  The thrust of Sousa's case is that she was

1

discriminated against and harassed by Dorsey through a "barrage" of "lengthy and unsolicited" personal phone calls and messages. SAC ¶ 8; *see also*, *id.* ¶¶ 50–51, 75–76, 81. These messages and calls are integral to her claims. She refers to and quotes from them throughout her SAC. *E.g.*, *id.* ¶¶ 50–51, 75–76, 81. And she relies on the exact records Defendants submitted in advancing her claim that Amazon conducted a sham investigation and then retaliated. *Id.* ¶¶ 198–200, 204–207. The Court should dismiss Sousa's claims, again, and should do so **with prejudice**.

## I.     ARGUMENT

### A.     Sousa Has Not Alleged Disparate Treatment

**1. <u>No adverse action</u>.** As detailed in Defendants' opening brief, Sousa still has not pleaded an actionable adverse action. *See* Mot. 5–10. In the few instances where her scattershot opposition addresses these arguments, it does little to contest them. **First,** Sousa argues that she can allege an adverse action through unlawful harassment. Opp. 15. But none of the cases she cites hold that a *separate* disparate treatment claim can be established through harassment. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253 (10th Cir. 1998) (involving only a retaliation claim); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456 (7th Cir. 2002) (same). Moreover, as detailed *infra* at 5–6, Sousa has failed to allege harassment so severe or pervasive that it could rise to the level of a tangible adverse action.

**Second**, Dorsey giving Sousa the proverbial "cold shoulder"—even if true (which the records reveal it is not, *see* Mot. 10)—does not constitute an adverse action. Mot. 9–10 (collecting authorities). Sousa offers no response to this (or any of the on-point authority supporting it).

**Third**, Sousa has added no allegations that would alter the Court's holding that her temporary holiday assignment did not constitute an adverse action. *See* MTD Op. 5–6; Mot. 5–9. Sousa does not contest that her holiday assignment caused no change in title, pay, or benefits. She also does not, and cannot, contest that even after her holiday assignment (and had she not taken a leave of absence

from December 2020 until she resigned in July 2021), she would have been eligible for promotion as anticipated in her offer letter. Mot. 6 (citing MTD Op. 5). Nor does she dispute that her holiday assignment was very brief. In fact, Sousa does not even dispute that *she* voluntarily extended the length of the temporary assignment. *See* Mot. 5–6 (citing Ex. B at 5–6; Ex. D at 2–3).

Instead, she claims (again) that the temporary assignment constitutes an adverse action because she had to perform manual duties and it "harm[ed] her prospects for promotion." Opp. 16. The Court already rejected these arguments. *See* MTD Op. 5. Moreover, Defendants detailed three separate reasons why Sousa's new allegations regarding the temporary assignment's speculative impact on her employment through a (days-long) decrease in opportunity for "feedback" are irrelevant as a matter of law. Mot. 6–9. Sousa does not respond to *any* of these three arguments. And the only authority she cites, *see* Opp. 16, is inapposite because, unlike Sousa's brief reassignment, those cases involved *permanent* transfers to less desirable positions.[1]

With the writing on the wall, Sousa now claims—for the first time—that she suffered *other* adverse actions, namely that she suffered a "[l]oss of promotion" in 2021. Opp. 16–17. But Sousa's SAC is clear that she voluntarily placed herself on medical leave in December 2020 *and never returned to work*. SAC ¶¶ 184, 191, 214. It defies common sense that Sousa would be entitled to a promotion when she failed to return to work—and she points to no legal authority to the contrary or any factual allegation establishing such a right. Nor does Sousa's SAC include *any* allegation that, had she continued working, she was a strong performer deserving of a promotion.

---

[1] *See Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (plaintiff permanently transferred to a "dead-end job" that had already "effectively been eliminated" such that he was immediately terminated); *de la Cruz v. NYC Human Res. Admin.*, 82 F.3d 16, 21 (2d Cir. 1996) (plaintiff permanently transferred out of an "'elite'" unit into a position in a unit with "less prestig[e] [and less] opportunity for professional growth"); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999) (plaintiff's working conditions "significant[ly] disrupt[ed]" because employer removed files such that she was unable to make sales and earn commission).

In short, Sousa's allegations are nothing like the actionable "failure to promote" she relies on in *Curry v. Devereux Foundation*, 541 F. Supp. 3d 555, 559 (E.D. Pa. 2021). There, the plaintiff not only was actively working, but had formally applied and interviewed for two open positions and was passed over. *Id.* But where (as here) an employee is not actively working or seeking a promotion, there can be no *prima facie* case based on a purported "failure to promote." *See, e.g.*, *Bates v. Tandy Corp.*, 186 F. App'x 288, 293 (3d Cir. 2006) (affirming dismissal of failure to promote case under Rule 12(b)(6) because the plaintiffs had not "applied for" and had, in fact, "declined . . . the first step in the application process" for a promotion); *McLintock v. City of Phila.*, 504 F. Supp. 3d 411, 423 (E.D. Pa. 2020) ("Defendants never refused to promote Plaintiff . . . [rather,] she never applied for the position.").[2]

**2. *No Causation*.** Even if Sousa alleged an adverse action, she has not alleged that it was undertaken "because of" her race, ethnicity, national origin, or sex. Her response—a single footnote, Opp. 16 n.7, that relies entirely on *Borrell v. Bloomsburg University*, 955 F. Supp. 2d 390 (M.D. Pa. 2013)—widely misses the mark. *Borrell* makes clear that purported comparators must be shown to be "alike *in all relevant aspects*." *Id.* at 405 (plaintiff met this burden when he alleged that comparator was not only also a student but also known to have substance abuse problems) (quotation marks omitted; emphasis added). That is exactly what Sousa fails to do here. *See* Mot. 10–11. In fact—and contradicting her conclusory assertion that it was "obvious" Dorsey "did not treat male employees in a similar fashion," Opp. 16 n.7 (quotation marks omitted)—Sousa's own allegations reveal she and a *male* employee were selected for the holiday reassignment. *See* Mot. 11; SAC

---

[2] Sousa's argument that Amazon failed to promote her in November 2020 when it allegedly offered a transfer and promotion to another employee, Opp. 15, fails because Sousa does not allege that she applied for or expressed any interest in that position or asked for a raise or promotion. (Nor does she allege that she was more qualified for any such alleged promotion.)

4

¶ 151.

### B. Sousa Fails to Allege But-For Cause Required by Section 1981

The gravamen of Sousa's complaint is sex discrimination. She claims that "Dorsey habitually made sexual advances toward women he managed" and "obviously targeted [Sousa] as a woman on the basis of her sex/gender, and he engaged in such acts towards various female subordinates." Opp. 5, 10. This precludes an inference of causation under § 1981. Mot. 11–12 (collecting authorities). Sousa attempts to distinguish her case from the others because she brings claims not only under § 1981 but *also* under Title VII. Opp. 10. That only weakens her position. Sousa's Title VII claims are that adverse actions were taken "because of" her sex and national origin. Moreover, aside from conclusory and editorialized statements not entitled to a presumption of truth, *e.g.*, SAC ¶ 84 ("Prompted by an apparent desire to discuss her Japanese heritage, Dorsey told Ms. Sousa that he likes anime[.]"), Sousa has not added any allegations to those this Court previously found failed to state a § 1981 race-based discrimination claim. *See* MTD Op. 7, 11.

### C. Sousa Has Not Alleged a Hostile Work Environment

Just as with her FAC, Sousa's SAC alleges a handful of innocuous conversations with Dorsey that do not demonstrate a workplace "permeated with discriminatory intimidation, ridicule, and insult" at either a "severe" or "pervasive" level. *Betz v. Temple Health Sys.*, 659 F. App'x 137, 142 (3d Cir. 2016) (quotation marks omitted); *see also* Mot. 12–13 (no alleged "'severe'" or "'objectively lewd'" conduct); *id.* 14 (no alleged "'pervasive'" misconduct).

Tellingly, Sousa's opposition points to *no* new factual allegations as curing the deficiencies in her last pleading. Nor could she. The only new assertions—*e.g.*, that Dorsey asked where she went to college and asked her to show him around the campus sometime—are just as benign as those that failed before. Instead, Sousa again argues that the pleading standard permits her to work in "approximations" and that assessing the severity or pervasiveness of her allegations, without

5

"document discovery" and testimony, is inappropriate. Opp. 3, 10–11, 13.

This Court already rejected these same arguments when it dismissed Sousa's hostile work environment claim just a few months ago. *See* MTD Op. 7–8 (Sousa's "alleg[ations] do[] not amount to severe or pervasive discrimination"). That result is consistent with courts across this Circuit, which routinely dismiss sex-based hostile workplace claims on the pleadings where the facts do not meet the "severe or pervasive" standard. *E.g.*, *Betz*, 659 F. App'x at 142; *Jennings-Fowler*, 680 F. App'x at 118; *Kohinchak v. U.S. Postmaster Gen.*, 677 F. App'x 764, 767–68 (3d Cir. 2017); *Molchan v. Delmar Fire Dep't, Inc.*, 2020 WL 264142, at *4 (D. Del. Jan. 17, 2020); *see also McKenna v. VCS Grp. LLC*, 2009 WL 3193879, at *5 (D. Conn. Sept. 30, 2009).[3] And it makes good sense: to the extent Sousa was subjected to a hostile workplace, *she* would have personal knowledge of all the facts and circumstances supporting that claim. She does not need the benefit of document discovery or testimony to plead the facts needed to state a sexual harassment claim.

Sousa's few cited cases, *see* Opp. 10–11, 13, do not hold otherwise. In fact, most do not involve hostile work environment claims at all. *See, e.g.*, *Bowlen v. Coloplast A/S*, 2019 WL 4597570, at *2 (W.D. Pa. Sept. 23, 2019) (products liability); *Wilkerson v. New Media*, 522 F.3d 321 (3d Cir. 2008) (Title VII retaliation). And the one case that does, *Castleberry v. STI Group*, unremarkably states that a plaintiff *can* survive a motion to dismiss where—*unlike here*—she alleges the claim's "requisite *prima facie* elements," including severe or pervasive conduct. 863 F.3d 259, 265–66 (3d Cir. 2017).[4]

---

[3] Sousa inaccurately claims that "nearly every case Defendants rely upon" was decided on a summary judgment basis. Opp. 12. She simply ignores the (many) cases cited across Defendants' briefing that were decided at the pleading stage.

[4] Sousa argues the Court can also consider her allegations regarding incidents not directed towards her. Opp. 11. But in doing so she cites only to out-of-circuit authority. *Id.* And she does nothing to counter the fact that those alleged incidents—even if inappropriate—are a "far

6

### D. Sousa Has Not Alleged Quid-Pro-Quo Harassment

Sousa likewise has failed to plead quid-pro-quo harassment. No new facts are identified in her opposition that would cure the deficiencies that led the Court to dismiss this same claim in December.[5] Instead, Sousa argues that she does not need to allege Dorsey made "'sexual demands'" to plead a viable claim. Opp. 11. But that position is flatly inconsistent both with this Court's prior opinion, *see* MTD Op. 9 (assessing which allegations arguably amount to a "sexual demand"), and Sousa's own case law, *see Bryson v. Chicago State Univ.*, 96 F.3d 912, 915 (7th Cir. 1996) (quid-pro-quo harassment occurs where "submission to sexual demands is made a condition of tangible employment benefits"). Sousa's attempts to recharacterize the facts alleged as requests by Dorsey to spend "private, romantic time" with her, Opp. 11, are due no weight. Dorsey's alleged statements amount to nothing more than requests to "hang out," and are not the type of sexual demand or "quid" required to create a sexual harassment claim. Mot. 17–18.

Sousa also has not alleged any adverse action taken against her. *Supra* at 2–4. Nor has she alleged *when* she allegedly rejected Dorsey's alleged requests to "hang out," such that any purported resulting adverse action could be causally tied to those rejections. Mot. 18.

---

cry from the kind of repeat misconduct that alters the conditions of employment and creates an abusive working environment." MTD Op. 8 (alterations and quotation marks omitted); *see also* Mot. 16–17.

Nor can Sousa's claim rely on incidents or statements she did not personally experience, *e.g.*, SAC ¶¶ 10 ("Sousa learned that Dorsey had a reputation for flirting with women in the workplace."), 193 (Sousa "later learned" about alleged statements by Dorsey); *see also id.* ¶¶ 16, 91, 96 (similar). "Title VII's prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay." *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 182 (2d Cir. 2001); *see also Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 847 (3d Cir. 2016) (rejecting plaintiff's argument that "citing the grievances of others and asserting that these contributed to a hostile work environment is sufficient to establish a *prima facie* case").

[5] Sousa falsely asserts that she has now alleged Dorsey asked whether she was "available" before her holiday assignment. Opp. 11. Nowhere in her SAC does Sousa make this allegation—and she offers no citation at all. *See id.*

Instead, Sousa reverts to her argument that it would be inappropriate for the Court to resolve this claim on the pleadings. Opp. 11–12 (arguing it is "'difficult'" to articulate her claim without "document discovery" and testimony). The Court should reject this argument, just like it did in December. *See* MTD Op. 8–9. Sousa would have personal knowledge of, and does not need discovery to plead facts supporting, any purported "quid" (sexual demand) or "quo" (adverse action).

### E.    Sousa Has Not Alleged She Was Retaliated Against

*First*, Sousa does not address and apparently concedes that her reassignment from Harleysville to New Castle when she was rehired did not constitute retaliation. *See* Mot. 19.

*Second*, her temporary holiday assignment does not create a viable claim for retaliation. The holiday assignment was not an adverse action. *Supra* at 2–3. And, even if Sousa's purported "rebuffing" of Dorsey could constitute protected activity, she has not proffered any facts supporting a reasonable inference that she was selected for the holiday assignment as a result. To the contrary, she was reassigned along with a *male* employee. *Supra* at 5. Nor does Sousa's "cold shoulder" allegation create an adverse action. *See supra* at 2.

*Third*, Sousa's allegation that Amazon adhered to a policy that required Sousa to return from medical leave before requesting a transfer does not constitute retaliation. *See* SAC ¶¶ 206–07, 212. Refusing to transfer an employee is not an adverse action unless the employee was entitled to the transfer. Defs.' Mot. to Dismiss First Am. Compl., D.I. 17, at 20 (collecting cases). While Sousa asserts this is "false," Opp. 17, her lone cited authority proves *Defendants* right. *See Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997) (denial of hardship transfer request may qualify as adverse action only because such "hardship transfer" was a "common" practice for the employer and therefore arguably a "privilege of [plaintiff's] employment") (quotation marks omitted). Here, Sousa

has not alleged that she had any right to a unilateral transfer.[6] Nor has Sousa alleged any new facts supporting that her subsequent resignation was a constructive discharge. As the Court already explained, "working in the same facility as Dorsey" before the request was considered does not amount to "intolerable" conditions required for a constructive discharge. *See* MTD Op. 10–11.

## F. The Court May Consider the Text Messages and Phone Call Logs Sousa Relies On

Finally, Sousa is perturbed that the text message and phone call records underlying her claims and allegations in this lawsuit are now in the record. She is worried about that for good reason: those records directly contradict the allegations in her complaint. By way of example only, they:

- Reveal that Sousa *voluntarily* chose to *extend* the temporary holiday assignment she now claims is an adverse action, Mot. 5–6;

- Show Dorsey never gave her the proverbial "cold shoulder" by refusing to respond to her work-related messages, Mot. 10;[7]

- Reveal that Dorsey did not call her as often as she claims and that, in many instances, she initiated the allegedly unwanted calls from Dorsey, Mot. 15–16; and

- Confirm that she carefully crafted allegations regarding purported comparators because she knows neither was similarly situated to her with respect to tenure or position, Mot. 11 n.10.

To be clear, the Court does not need to consider these documents to resolve the motion in Defendants' favor. *See* Mot. 1, 16. Just as with Sousa's prior pleadings, the SAC's allegations alone are insufficient to withstand scrutiny under Rule 12(b)(6).

But the Court certainly may consider these documents in assessing Sousa's pleading because they are integral to her claims. Sousa claims that she was harassed and discriminated against through

---

[6] Sousa's argument that Amazon "transferred her" under the same circumstances in 2020 is false. As Sousa's own allegations show, in 2020 Sousa had *resigned* her employment and was then *reinstated* to an open position at another facility. SAC ¶¶ 43–45. Here, in stark contrast, Sousa had not resigned but instead was on *medically recommended* leave. *Id.* ¶¶ 177, 185–86, 191, 212; Opp. 6. Requiring employees on medical leave to return to work, with their doctor's permission, before taking further action is commonplace.

[7] Across *35 pages* of messages in October 2020, Sousa can point to *just two messages* where Dorsey did not respond until the next day. Opp. 20 n.9.

9

a "barrage" of unsolicited, lengthy phone calls and inappropriate text messages. SAC ¶ 8. And as her own opposition details, *see* Opp. 9–10, she explicitly refers to and quotes from them throughout her complaint. *E.g.*, SAC ¶¶ 50, 76, 103, 119, 120, 124, 170, 171, 184, 185, 195, 198. This incorporates them by reference. *See, e.g.*, *Harris v. N.Y. State Comptroller*, 2022 WL 814289, at *14 (S.D.N.Y. Mar. 17, 2022) (text messages incorporated by reference where plaintiff quoted from them and "the alleged contents of those messages form[ed] the basis of Plaintiff's claims" "for hostile work environment and retaliation"); *Kaplan v. Wings of Hope Residence, Inc.*, 2020 WL 616630, at *4 (E.D.N.Y. Feb. 7, 2020) (text messages incorporated by reference); *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 640 n.1 (N.D. Ill. 2019) (same).[8] **Moreover**, Sousa explicitly relies on these same messages in advancing her retaliation claim. SAC ¶¶ 197–205; *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) ("clearly incomplete" text messages incorporated by reference because they "underpin[ned]" and "form[ed] the basis of" plaintiff's retaliation and willfulness claims).

Critically, Sousa does not contest these documents' authenticity. *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). And, while she vaguely argues that these records may be "incomplete," that is irrelevant because (1) they are still authentic versions of the documents actually referenced in the SAC and (2) to the extent they are "cherry-picked," Opp. 3, that was *Sousa's* doing, because these are the records *she* submitted to Amazon. D.I. 36 ¶¶ 3–7.

## II.   CONCLUSION

Defendants respectfully request that Sousa's claims be dismissed **with prejudice**.

---

[8] Sousa's cases regarding a "'mere passing reference'" to documents, Opp. 8–9, are irrelevant because her claims are premised on (and do not "merely reference") these documents.

Dated: April 11, 2022 By: /s/ *Beth Moskow-Schnoll*
Beth Moskow-Schnoll (No. 2900)
Juliana van Hoeven (No. 6498)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel.: 302-252-4465
Email: moskowb@ballardspahr.com
vanhoevenj@ballardspahr.com

Jason C. Schwartz (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202-955-8242
Email: JSchwartz@gibsondunn.com

Jessica Brown (*pro hac vice*)
Hannah Regan-Smith (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Ste. 4200
Denver, CO 80202-2642
Tel.: 303-298-5700
Email: JBrown@gibsondunn.com
HRegan-Smith@gibsondunn.com

*Attorneys for Defendants Amazon.com, Inc., Amazon Service LLC, and Lawrence Dorsey*

11