IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EMILY SOUSA,

        *Plaintiff*,

        v.                                                  No. 1:21-cv-717-SB

AMAZON.COM, INC.; AMAZON.COM
SERVICES LLC; LAWRENCE
DORSEY,

        *Defendants.*

---

Michele D. Allen, Emily A. Biffen, ALLEN & ASSOCIATES, Wilmington, DE; Lawrence M. Pearson, Anthony G. Bizien, Alfredo J. Pelicci, WIGDOR LLP, New York, NY.

        *Counsel for Plaintiff.*

Beth Moskow-Schnoll, Juliana van Hoeven, BALLARD SPAHR LLP, Wilmington, DE; Jason C. Schwartz, GIBSON DUNN & CRUTCHER LLP, Washington, DC; Jessica Brown, Hannah Regan-Smith, GIBSON DUNN & CRUTCHER LLP, Denver, CO.

        *Counsel for Defendants.*

---

**MEMORANDUM OPINION**

---

September 29, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Civil-rights laws guarantee equal treatment. But they do not right every workplace wrong.

Emily Sousa worked for Amazon. Her time there fell far short of what she had hoped. After resigning, she sued for discrimination, hostile work environment, retaliation, and more. But because she has not pleaded all the elements of these claims, I must dismiss her complaint. And because it would be futile for her to try again, I dismiss with prejudice.

## I. BACKGROUND

Sousa is a Japanese-American woman. 2d Am. Compl., D.I. 28 ¶ 34. She began working as a shift manager at an Amazon warehouse in the summer of 2020, right after she finished college. *Id.* ¶¶ 35–37. During training, a male manager compared her to an actress, and she later found out that the actress was an adult-film star. *Id.* ¶¶ 38–41. He also told her that "women are too delicate to work at Amazon." *Id.* ¶ 42. So she resigned. *Id.* ¶ 43. Amazon offered to reinstate her and move her to a new facility, and she accepted. *Id.* ¶¶ 44–45.

Her new position was in New Castle, Delaware, where she worked under Lawrence Dorsey. *Id.* ¶¶ 46, 50. After her first day of training, Dorsey sent her an unsolicited selfie. *Id.* ¶¶ 46, 50, 76–79. He asked her to call him; on the phone, he asked how she liked his new haircut. *Id.* ¶¶ 50–51, 76.

Dorsey made many more personal calls to Sousa. In all, he called her on at least fourteen separate days between the end of August and the end of November. *Id.* ¶¶ 8, 75. Some calls lasted an hour or more. *Id.* He discussed his dating life and her

relationship status. *Id.* ¶¶ 111, 187–190. He said that he liked anime and suggested she could be his tour guide if he ever went to Japan. *Id.* ¶¶ 84–86. He also seemed to suggest that she could "show him around" the University of Delaware, where she went to college. *Id.* ¶ 77. He hinted that he could help her get a promotion and a raise. *Id.* ¶¶ 90, 100, 107. Once, when she was trying to get off the phone with him, she told him that she should let him go because it was late. *Id.* ¶ 79. Dorsey responded, "You could call me in the middle of the night and I would answer." *Id.*

Dorsey did other things that made her uncomfortable. He made vulgar and inappropriate comments at work, once in her presence. *Id.* ¶¶ 9, 54–55, 96–97, 112. He had a reputation for helping female subordinates who appeared interested in him and disfavoring those who turned him down. *See, e.g., id.* ¶¶ 91–98, 105, 112–118, 163. For instance, after a female coworker rejected him, Dorsey had Sousa write her up. *Id.* ¶ 95–98. And when Sousa made it clear that she was not interested in him, he began to ignore her work-related communications. *Id.* ¶¶ 103–104, 110.

In late November 2020, Sousa was reassigned to work at an Amazon facility in New Jersey. *Id.* ¶¶ 132–176. She was told that this was due to staffing shortages, but she believed that Dorsey had her reassigned to get back at her for rebuffing his advances. *Id.* ¶¶ 139, 146–162. In New Jersey, she had to do work that was normally reserved for lower-level employees. *Id.* ¶ 174. And she was away from her normal subordinates and peers for ten days, which meant that they could not make comments about that period for her eventual performance reviews. *Id.* ¶¶ 139, 154–158, 184.

3

The stress of Dorsey's treatment eventually forced Sousa to take a seven-month medical leave. *Id.* ¶¶ 177–193, 214. While on leave, she reported Dorsey's harassment to HR. *Id.* ¶ 194. Amazon investigated but found her claims unsubstantiated. *Id.* ¶¶ 197–204. She asked to be transferred, but Amazon told her that she would have to return to her old workplace before she could apply for a transfer. *Id.* ¶¶ 206–207. Distressed at the thought of working with Dorsey again, she resigned. *Id.* ¶¶ 214–215.

Sousa sued Amazon under Title VII and 42 U.S.C. § 1981. I dismissed her First Amended Complaint but gave her leave to amend. D.I. 27. She then filed a Second Amended Complaint. D.I. 28. Amazon has asked me to dismiss this complaint with prejudice. D.I. 32.

## II. LEGAL STANDARD AND SCOPE OF MY ANALYSIS

On a motion to dismiss, I normally ask whether the *complaint* contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). But Amazon asks me to consider materials beyond the complaint (text-message screenshots, emails, and the like) that it says undermine Sousa's claims. *See* D.I. 33 at 15 & n.13; D.I. 35; D.I. 36. I will not.

True, I may look at documents that are "integral to or explicitly relied upon" in Sousa's complaint. *Burlington Coat*, 114 F.3d at 1426 (internal quotation marks and emphasis omitted). For example, if I were deciding a motion to dismiss a breach-of-contract claim, I could consider the contract at issue. *Mele v. Fed. Rsrv. Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004). Or I could consider a bond prospectus in a suit

4

challenging the prospectus as misleading and fraudulent. *In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993).

But the documents that Amazon attaches to its motion to dismiss are not "integral to" Sousa's complaint, at least not in the way that a contract is integral to a complaint based on that contract. Neither did Sousa's complaint "explicitly rel[y] upon" these documents: it neither quotes them nor claims that they spell out any legal duties between the parties.

If this were a motion for summary judgment, or if the case were before a factfinder, the documents might prove important. But at this stage, I will examine the complaint alone.

### III. SOUSA AGAIN FAILS TO PLEAD VIOLATIONS OF TITLE VII

Title VII forbids employers from discriminating based on race, sex, or national origin. 42 U.S.C. § 2000e-2(a). Sousa claims Amazon violated this prohibition in four ways: it (A) subjected her to a hostile work environment, (B) discriminated against her because of her race and sex, (C) retaliated against her for complaining about the harassment and discrimination that she experienced, and (D) allowed quid pro quo sexual harassment. But Sousa fails to allege enough facts to support any of these allegations.

#### A. Sousa has failed to plead a hostile work environment

A hostile work environment is one in which an employee suffers intentional discrimination because of her sex that was "severe or pervasive." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotation marks omitted). That

is a high bar. "[T]he sporadic use of abusive language, gender-related jokes, and occasional teasing" are not grounds for a lawsuit. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). Instead, Sousa's work environment needed to be so "permeated with discriminatory intimidation, ridicule, and insult" that it "alter[ed] the conditions of [her] employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). "[P]ervasive" means not just "episodic," but "sufficiently continuous and concerted." *Faragher*, 524 U.S. at 787 n.1 (internal quotation marks omitted). Put simply, harassment does not change the terms and conditions of employment unless the environment is "extreme." *Id.* at 788.

To decide whether the conduct was extreme enough, we consider all the circumstances, including how frequent and severe it was and whether it was physical or verbal. *Harris*, 510 U.S. at 23; *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).

Sousa alleges neither severe nor pervasive discriminatory treatment. Start with Dorsey's phone calls. He called her about once a week, discussed personal matters, and suggested that they hang out socially. D.I. 28 ¶¶ 8, 75–77, 80, 84–86, 111, 187–90. One time, he turned the conversation to Sousa's Japanese heritage by discussing anime and invoking a stereotype about Japanese people. *Id.* ¶ 84. But he never said anything sexual. Although these topics appear inappropriate for a professional relationship, they are not "sufficiently extreme" to be considered "severe" harassment or discrimination. *Cf. Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971

6

F.3d 416, 428 (3d Cir. 2020) (supervisor coerced sex, showed plaintiff pornography, asked her to film herself performing sexual acts, and scolded her for speaking to other men); *Moody*, 870 F.3d at 215 (supervisor tried to undress plaintiff, sent her explicit text messages, called her into his office while he was naked, and pressured her into sex).

Her other allegations fall short, even when combined with the phone calls. One manager crassly noted that she had the same name as an adult film star. *Id.* ¶¶ 39–41. Dorsey made a profane and inappropriate comment in her presence and once directed her to write up a female coworker who had rebuffed him. *See id.* ¶¶ 9, 55, 95–99, 112. Plus, one coworker assumed she spoke Chinese, and others mistook her for a different Asian female manager. *Id.* ¶ 58. Doubtless these incidents were uncomfortable and even humiliating. But they were not "severe." And since they were episodic, they were not pervasive either.

Finally, Sousa alleges that she got seven harassing phone calls after Amazon completed its investigation into her complaints against Dorsey. D.I. 28 ¶¶ 217–230. In four, the caller asked creepy questions like "Do you know who this is?" and "Did you figure it out yet?" *Id.* ¶¶ 219, 229. (She did not pick up two of the calls, and in one she heard only breathing. *Id.* ¶¶ 218, 225, 228.) In three of the calls, the speaker sounded like Dorsey. *Id.* ¶¶ 219, 223, 226. Although these calls were understandably distressing, they were not sexual. Neither were they "physically threatening," and they did not even involve a "mere offensive utterance." *Harris*, 510 U.S. at 23.

Of course, I must consider these incidents as a whole, not in isolation. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999). Taken together, I find that all these allegations cannot add up to a hostile work environment.

**B. Sousa has failed to plead race or sex discrimination**

For her Title VII disparate-treatment claims to survive, Sousa must allege, among other things, that she has "suffered an adverse employment action" and the circumstances of that adverse employment action "give rise to an inference of intentional discrimination." *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Sousa points to six events that she thinks count as adverse actions. Opp. Br., D.I. 39 at 15–18. But adverse employment actions must be "serious and tangible enough to alter [her] compensation, terms, conditions, or privileges of employment." *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (internal quotation marks omitted). Only one of her events appears to count, and that one fails to give rise to a plausible inference of discrimination. I will examine each in turn.

*1. Repeated harassment.* First, Sousa claims that her harassment was so pervasive that the harassment itself was an adverse employment action. D.I. 39 at 15. The only binding authority that she cites for this proposition discusses hostile work environments, not adverse employment actions. *Id.* (citing *Faragher*, 524 U.S. at 786–88). As discussed above, she has not pleaded a hostile work environment. And though harassment that falls short of a hostile work environment can still be distressing, it does not "alter an employee's compensation, terms, conditions, or privileges of

8

employment." *Jones*, 796 F.3d at 326 (internal quotation marks omitted). So this theory does not count.

*2. The cold shoulder.* Elsewhere, she says that when she turned down Dorsey's advances, he gave her the "cold shoulder" by refusing to provide managerial guidance. D.I. 28 ¶¶ 103–04, 110. But this is not a "tangible" change to her employment status either.

*3. Temporary reassignment.* Next, Sousa points to her temporary transfer to New Jersey in November 2020. D.I. 39 at 16. Her argument here takes a few forms.

She cites a pair of cases for the idea that a worksite transfer itself can be an adverse employment action. *Id.* (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) and *de la Cruz v. N.Y.C. Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996)). But those cases involved *permanent* transfers. A temporary reassignment to cover a brief staffing shortage is not a "serious and tangible" adverse action.

She also styles this transfer as a "demotion." D.I. 39 at 16. I rejected this argument when I dismissed her First Amended Complaint. MTD Op., D.I. 26 at 5–6. Her Second Amended Complaint adds allegations that there were other managers like Sousa who could have been transferred and were not, and that some of her coworkers viewed her transfer as undesirable. D.I. 28 ¶¶ 146–153, 161, 166–67, 172. That is not enough. Demotions are marked by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (internal quotation marks omitted). Here, her employment level did not change during the reassignment, and

she does not deny that her salary was unchanged. D.I. 28 ¶ 172; D.I. 39 at 16. Her added allegations do not change that. So it was not a demotion.

Lastly, she says that the temporary transfer hurt her promotion opportunities. D.I. 39 at 16–17. Her time in New Jersey as a line worker meant that she would get fewer reviews from her subordinates and peers, both of which are crucial for Amazon's promotion process. D.I. 28 ¶¶ 154–158. And all this came during Amazon's peak season, which lasted from mid-November to Christmas. *Id.* ¶ 15, 154. But Sousa had been working as a manager since June, and her performance assessment was scheduled for the following April. *Id.* ¶¶ 36–37, 143. Her reassignment was for a fraction of the peak season, and she would have been evaluated on at least nine months of managerial work. As alleged, this ten-day assignment did not "serious[ly] and tangibl[y]" limit her prospects for promotion. *Jones*, 796 F.3d at 326.

*4. Failure to promote.* In addition, Sousa points to a time that she was refused promotions that were given to her male peers. D.I. 28 ¶¶ 136–138. Failure to promote is an adverse employment action. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995) (drawing on Title VII law to evaluate an age-discrimination claim); 3 N. Peter Lareau, *Labor and Employment Law* § 58.01 (2022). But to state a claim for discriminatory promotion, Sousa needed to allege that she was qualified for the promotion and had applied for it. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253–54 (1981). She never claims this. *See* D.I. 28 ¶¶ 136–38.

*5. Forced medical leave and constructive discharge.* Sousa also identifies Amazon's forcing her to take unpaid medical leave and her constructive discharge as adverse

10

employment actions. D.I. 39 at 15, 17. "A constructive discharge constitutes an 'adverse employment action' for purposes of Title VII." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017). But constructive discharge requires a showing of harassment greater than the showing needed for hostile work environment. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013). Since Sousa has not pleaded hostile work environment, she cannot claim constructive discharge. And neither can she claim that Amazon forced her medical leave. *Cf. Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000) (treating a claim of being "forced to take medical leave" like a constructive-discharge claim).

*6. Refusal to transfer.* Finally, Sousa argues that Amazon's refusal to transfer her when she was considering coming back from medical leave was an adverse employment action. D.I. 39 at 17. She points to no Third Circuit caselaw for this, but some circuits accept refusal to transfer as an adverse action. *See, e.g., Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997); *Krulik v. Bd. of Educ. of N.Y.*, 781 F.2d 15, 18–19, 22 (2d Cir. 1986). When transfers are "common … practice," they can be considered a "'privilege' of employment." *Randlett*, 118 F.3d at 862; *see also Jones*, 796 F.3d at 326 (altering someone's privileges of employment is an adverse employment action). Sousa has alleged that Amazon regularly shuffled employees among its facilities but refused in her case. D.I. 28 ¶¶ 211–14. I assume without deciding that Amazon's refusal was an adverse action.

So Sousa needed to allege that the circumstances of Amazon's refusal "give rise to an inference of intentional discrimination." *Makky*, 541 F.3d at 214. She has not done

11

this. She has not alleged that Amazon refused to transfer her because she was a woman or of Japanese descent. Nor has she alleged that male employees or employees of other races were granted transfers in similar circumstances. All she has alleged is that, in general, transfers happened often. D.I. 28 ¶ 211. This does not give rise to an inference of intentional discrimination.

### C. Sousa has failed to plead retaliation

To plead that Amazon violated 42 U.S.C. § 2000e-3(a) by retaliating against her, Sousa needed to allege that (1) "she engaged in activity protected by Title VII," (2) Amazon then took an adverse employment action against her, and (3) her protected activity caused the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (internal quotation marks omitted).

As I have said, most of her allegations fail to meet the second requirement: that Amazon took an adverse employment action against her. She also points to times when Dorsey showed favoritism to women who went out with him and tried to harm those who did not. D.I. 39 at 18 (citing D.I. 28 ¶¶ 91–93, 95–98, 109–12, 114–18, 122–24, 128). But those were not actions taken against her. And though Amazon's refusal to transfer her might count, Sousa fails to show causation. She pleads no facts showing that her protected activity—reporting Dorsey's behavior—caused Amazon to deny her transfer request. She says only that Amazon's refusal "appeared … retaliatory." D.I. 28 ¶¶ 211, 214. Because I must disregard conclusory allegations like these, I find that Sousa fails to plead the third element of retaliation here. *See Connelly*, 809 F.3d at 789–90.

12

**D. Sousa has failed to plead quid pro quo sexual harassment**

Quid pro quo harassment happens when an employee's "response to unwelcome [sexual] advances was subsequently used as a basis for a decision about compensation, terms, conditions, or privileges [of] employment." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281–82 (3d Cir. 2000) (internal quotation marks omitted, alterations adopted). The employment decision that results from an employee's rejection of unwanted advances must be a "significant change in employment status … or … benefits." *Ellerth*, 524 U.S. at 753–54, 760.

Sousa fails to allege that her rejection of Dorsey led to any significant employment decisions. Dorsey suggested that they hang out socially, told her that she could call him in the middle of the night, and once asked how his new haircut looked. D.I. 28 ¶¶ 76–77, 79, 101. These could be taken as sexual advances. *Id.* ¶¶ 79, 101, 121. And those advances came with hints about promotion. *See, e.g., id.* ¶¶ 90, 100, 107, 110, 115. But she has not alleged that rebuffing Dorsey resulted in a "significant change" to her employment situation. Her rejection of Dorsey led him to ignore some of her requests for assistance. *Id.* ¶¶ 103–104, 110. *But see id.* ¶¶ 132–135, 145 (Dorsey still provided some managerial direction during this time). But this was not a change in the "compensation, terms, conditions, or privileges" of her employment. *Farrell*, 206 F.3d at 281–82. Sousa also alleges that, because she had rejected him, Dorsey transferred her to New Jersey. D.I. 28 ¶ 161. But as I explained in my previous opinion and above, this temporary reassignment was not a major change in her employment status.

13

### III. SOUSA AGAIN FAILS TO PLEAD A § 1981 VIOLATION

Sousa has also pleaded violations of 42 U.S.C. § 1981, alleging race discrimination and a hostile work environment. Race-discrimination claims under § 1981 and Title VII have the same elements. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267–68 (3d Cir. 2010). The same goes for hostile work environment. *Compare Castleberry*, 863 F.3d at 263 (§ 1981 elements), *with Moody*, 870 F.3d at 213 (Title VII elements). Because her race-based discrimination and hostile-work-environment claims fail under Title VII, they also fail here.

### IV. I DISMISS SOUSA'S CLAIMS WITH PREJUDICE

This is the third complaint that Sousa has filed. *See* D.I. 1, 14, 28. When I dismissed her previous complaint, I explained what she needed to allege to state a claim in this suit. D.I. 26. She has again failed to plead facts that would support her claims. Given this repeated failure, I find that further amendment would be futile. So I dismiss her Second Amended Complaint with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

\* \* \* \* \*

Sousa had a bad experience working for Amazon, and for Dorsey in particular. But to recover under Title VII and § 1981, she needed to plead specific facts that prove all the elements of her claims. She has not done so, even after I gave her the chance to amend her complaint for a second time. Thus, I dismiss her newest complaint with prejudice.